# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 17, 2008        Decided February 6, 2009

No. 08-1030

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND LISA JACKSON,
RESPONDENTS

———

Consolidated with 08-1031, 08-1041

———

On Petitions for Review of an Order
of the Environmental Protection Agency

———

*Daniel P. Selmi* argued the cause for petitioner. With him on the briefs were *Kurt R. Wiese*, *Barbara B. Baird*, *William M. Dillon*, *Michael Sherwood*, and *Sarah Burt*.

*Eileen T. McDonough*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief was *John C. Cruden*, Deputy Assistant Attorney General.

Before: SENTELLE, *Chief Judge*, and GINSBURG and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*:  The South Coast Air Quality Management District, the Santa Barbara County Air Pollution Control District, and Friends of the Earth challenge the final rule promulgated by the Environmental Protection Agency extending the deadline for the EPA to establish more stringent emissions standards for large marine diesel engines.  We conclude the EPA reasonably implemented the Clean Air Act (CAA) in extending the deadline, wherefore we deny the petitions for review.

## I.  Background

Section 213(a)(3) of the Act directs the EPA to establish emissions standards for new nonroad engines, including marine engines, that contribute to certain types of pollution. The standards must

> achieve the greatest degree of emission reduction achievable through the application of technology which the Administrator determines will be available ... giving appropriate consideration to the cost of applying such technology ... and to noise, energy, and safety factors.

42 U.S.C. § 7547(a)(3).  The standards are to "take effect at the earliest possible date considering the lead time necessary to permit the development and application of the requisite technology."  *Id.* § 7547(b).

In 1994 the EPA determined that marine engines contribute significantly to ozone pollution in certain areas and hence must be made subject to emissions standards. At issue in this case are standards for the largest type of marine engines, known as "Category 3" engines. *See* Control of Emissions from New Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder, 68 Fed. Reg. 9746, 9747/3 (Feb. 28, 2003) [hereinafter Tier 1 Rule]. In 2003 the EPA adopted a two-stage approach to regulating those engines. *Id.* at 9748/3. The Tier 1 Rule established interim standards based upon technology available at that time. *Id.* The Tier 1 Rule also set April 27, 2007 as the deadline for promulgating Tier 2 standards, which would be based upon the more advanced technologies the EPA expected to become available. *Id.* at 9750/2. The EPA deferred to the same date deciding whether to apply the standards to foreign-flagged vessels that enter ports in the United States. *Id.* at 9759/3.

In *Bluewater Network v. EPA*, 372 F.3d 404, 411 (2004), we held the "two-tiered approach to emissions standards ... satisfies the requirements of section 213(a)(3) of the CAA." Thereafter, however, the EPA failed to meet the deadline it had set itself for issuing Tier 2 standards. Instead, the EPA issued the rule now under review, which extended that deadline to December 17, 2009. Change in Deadline for Rulemaking to Address the Control of Emissions from New Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder, 72 Fed. Reg. 68,518 (Dec. 5, 2007) [hereinafter Extension Rule]. The EPA also published an Advance Notice of Proposed Rulemaking (ANPR) outlining the approach it was (and is) considering for Tier 2 standards and describing technologies that might be used to achieve those standards. Control of Emissions from New Marine Compression-Ignition Engines at or Above 30 Liters per Cylinder, 72 Fed. Reg. 69,522 (Dec. 7, 2007).

In the Extension Rule, the EPA explained that despite the delay it "remains committed to developing and proposing Tier 2 emission standards for Category 3 marine diesel engines." 72 Fed. Reg. at 68,520/2. Although it had gathered additional information since issuing the Tier 1 Rule, the EPA identified several issues that it must resolve before it can set Tier 2 standards. *Id.* at 68,520/1-2. The petitioners object that the EPA has violated its duty under § 213 by failing to set standards that attain the greatest degree of emissions reductions achievable with available technology. Relatedly, they argue the EPA's claim it needs more time to set Tier 2 standards is not supported by the record.

## II.  Analysis

We have jurisdiction to review the Extension Rule because it is a "nationally applicable regulation[] promulgated" by the EPA under the Act.  42 U.S.C. § 7607(b)(1).  As provided in the Act, we review the EPA's action deferentially to determine only whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 7607(d)(9)(A).  In reviewing for arbitrariness, "[w]e give particular deference to the EPA when it acts under unwieldy and science-driven statutory schemes like the Clean Air Act." *Bluewater Network*, 372 F.3d at 410 (internal quotation marks omitted).  We review the EPA's interpretation of the Act pursuant to *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984): We first ask whether the Congress has "directly spoken to the precise question at issue." *Id.* at 842.  If so, then we must "give effect to the unambiguously expressed intent of Congress." *Id.* at 843.  If, however, the "statute is silent or ambiguous with respect to the specific issue," then

we defer to the EPA's interpretation as long as it is "based on a permissible construction of the statute." *Id.*

A.  Extension of the Deadline

The petitioners first contend the Extension Rule violates CAA § 213 because the EPA has acknowledged that more effective technologies are available now and the CAA obligates the EPA to set standards based upon available technologies.  In promulgating the Rule, the EPA explained that, although it now has a better understanding of advanced technologies, it needs additional time to develop a Tier 2 emissions control program that exploits them effectively.  72 Fed. Reg. at 68,519/1.  Specifically, the agency stated, it must still evaluate testing and compliance procedures, address the disposal of emissions removed from exhaust gases, and assess the costs and benefits of alternative emission control strategies using new methodologies that account for at-sea emissions transported to shore.  *Id.* at 68,520/1-2.

In evaluating the petitioners' statutory argument, we are not writing on a clean slate: In *Bluewater Network*, we held the EPA satisfied § 213 when it issued interim Tier 1 standards and committed to adopting by 2007 Tier 2 standards that would depend upon more advanced technologies.  372 F.3d at 412.  The petitioners argue that, 2007 having come and gone, the EPA must adopt more stringent standards now to comply with the Act and that the EPA has abandoned its commitment to do so.  The Extension Rule, however, expressly reaffirms the EPA's commitment to adopting more stringent standards; only the timing has changed.[*]  Our task today, therefore, is limited to determining

---

[*]  The EPA argues it satisfied its nondiscretionary duty to promulgate standards under § 213(a)(3) by the adoption of Tier 1

whether the EPA's decision to promulgate Tier 2 standards in 2009 rather than in 2007 is unlawful. We hold that it is not.

Just as the agency's original decision to regulate Category 3 engines in a two-tiered process did not violate § 213, neither does extending the deadline in order to complete the tasks necessary to devising an informed Tier 2 regulation. First, as we held in *Bluewater Network*, § 213 does not require the EPA to "adopt the most stringent standards based on the most advanced control technologies"; rather, it requires the EPA to consider a number of factors, including cost, noise, and safety. 372 F.3d at 411. The command of § 213(a) therefore does not preclude the EPA from taking the time it reasonably needs to weigh those factors and formulate a rule; on the contrary, it affords the EPA broad discretion in setting standards. *Cf. Sierra Club v. EPA*, 325 F.3d 374, 378 (D.C. Cir. 2003) (holding CAA § 202(l), a provision *in pari materia* with § 213(a), "does not resolve how the [EPA] should weigh all these factors in the process of finding the 'greatest emission reduction achievable'"). In this case, the record demonstrates the EPA reasonably needs more time to develop a cost-effective implementation and compliance program for the advanced technologies. *See* 72 Fed. Reg. at 69,543-44. Furthermore, § 213(b) of the Act expressly contemplates that the EPA will consider "lead time" in setting standards. The EPA did so here and reasonably concluded that delaying Tier 2 standards will not delay the reduction of emissions because, although the feasibility of advanced control technologies has been demonstrated for some classes of vessels, if it set the

---

standards alone. In *Bluewater Network*, we held "the two-tiered approach to emissions standards ... satisfies the requirements of section 213(a)(3)." 372 F.3d at 411. We need not reach the EPA's present argument because the EPA remains committed to that two-tiered approach, *see* 72 Fed. Reg. at 68,520/2 – a commitment we rely upon in holding the Rule is lawful.

standards sooner the EPA would have to allow manufacturers more lead time in order to ensure the advanced technologies could feasibly be incorporated into a wide range of engines. 72 Fed. Reg. at 68,520/3; *see also id.* at 69,537/2.

Second, our reason for accepting as reasonable the EPA's initial decision to defer setting Tier 2 standards applies equally to the Extension Rule: Although advanced technologies are more widely available now than they were in 2003, the EPA could reasonably "recognize[] the merits of the advanced technologies" yet choose "not to forestall their *further* development by ... mandating their use without complete information and study." *Bluewater Network*, 372 F.3d at 412. As explained above, the record demonstrates the EPA reasonably needs additional time to formulate implementation and compliance measures. Meanwhile, as we observed in the prior case, the EPA has implemented Tier 1 standards to prevent backsliding while it formulates longer-term standards. *Id.* In these circumstances, we defer to the EPA's policy judgment that, whether that period is four years, as the agency originally contemplated, six years as have now elapsed, or almost seven years, as the Extension Rule will make it, is of little consequence given the complexity of this task and the EPA's explanation of the need for additional time.

The petitioners next contend the Extension Rule is arbitrary and capricious because the record does not support the EPA's claim that it needs more time to set Tier 2 standards. This argument, not surprisingly, reprises the petitioners' statutory argument; when a statute affords an agency substantial discretion – as § 213 does – the *Chevron* inquiry overlaps analytically with the determination whether the agency acted arbitrarily. *See Nat'l Ass'n of Regulatory Util. Comm'rs v. ICC*, 41 F.3d 721, 726-27 (D.C. Cir. 1994)

("Whether an agency action is to be judged as reasonable, in accordance with the ... arbitrary and capricious standard, or whether it is to be examined as a permissible interpretation of the statute *vel non* depends, at least theoretically, on the scope of the specific congressional delegation implicated"). Accordingly, we recur to the issues identified in the Extension Rule and posed for comment in the ANPR, *see supra* at 5, in view of which it is not arbitrary for the EPA to extend its deadline to allow sufficient time to complete its rulemaking process.

Finally, the petitioners claim the agency is arbitrarily delaying the rulemaking until it has negotiated international standards to control emissions from marine engines. In promulgating the Extension Rule, however, the EPA expressly represented that, although it does expect the international standard-setting process will generate relevant information that it should consider, it is "not deferring to that process." 72 Fed. Reg. at 68,522/2. The petitioners give us no reason to doubt the EPA's good faith in making this representation; the petitioners' mere assertion to the contrary is not a basis upon which we can fault the agency.[*]

B.  Foreign-Flagged Vessels

The petitioners also challenge the EPA's postponement of the decision whether to apply any emissions standards to foreign-flagged vessels that visit ports in the United States. Foreign-flagged vessels now meet the Tier 1 standards by

---

[*] The petitioners raise additional arguments in their reply brief, but in order to prevent "sandbagging of appellees and respondents," we do not consider arguments that were raised neither in the opening brief nor by the respondents. *See Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1181 (D.C. Cir. 2000) (internal quotation marks omitted).

complying with the equivalent international standards. *Bluewater Network*, 372 F.3d at 413. We previously held the same objection was premature because Tier 2 standards had not been promulgated; until they are, we observed, the EPA's decision to regulate foreign vessels would have no practical effect upon the emissions standards to which those vessels are subject. *Id.*

The Extension Rule reaffirms the EPA's commitment to decide this issue when it issues Tier 2 standards. 72 Fed. Reg. at 68,522/3. Deferring resolution of the issue until it will have an effect remains reasonable and the petitioners' objection therefore remains premature.

## III. Conclusion

In view of the issues remaining for the EPA to resolve before it sets Tier 2 standards, we hold the Extension Rule deferring the deadline for promulgating a regulation is neither arbitrary nor unlawful. At the oral argument the petitioners allowed that they would not be objecting to the new deadline if they could be sure the EPA would adhere to it. The EPA gives that assurance in the Extension Rule, *id.* at 68,520/2, and the record, which demonstrates the EPA has made progress toward promulgating Tier 2 standards, *see id.* at 69,522, suggests no reason to doubt it. We rely upon that assurance in holding that the Rule is lawful. In sum, because the Rule commits the EPA to proceed with the two-tiered approach approved in *Bluewater Network,* and to resolve outstanding issues and set standards no later than December 17, 2009, the petitions for review are

*Denied.*