Opinion for the Court filed by Circuit Judge RANDOLPH.
Opinion concurring in part and dissenting in part filed by Circuit Judge ROGERS.
RANDOLPH, Circuit Judge:
State authorities submit air pollution emissions data to the Environmental Protection Agency. EPA monitors the data in order to evaluate regional compliance with national air pollution standards. In 2007, EPA promulgated a regulation governing the exclusion of emissions data during “exceptional events” such as natural disasters. The Natural Resources Defense Council (NRDC) brought petitions for review, seeking to set aside the rule’s definition of “natural events” and to vacate several statements in the preamble to the rule concerning types of events that may qualify as “exceptional.”
I.
The Clean Air Act commands EPA to promulgate national air quality standards for certain air pollutants. States develop and implement plans to comply with EPA’s air quality standards. 42 U.S.C. §§ 7408-7410. The states have established a network of air quality monitoring stations to measure regional compliance with EPA’s national standards. Based on this data, EPA designates areas as being in either “attainment” or “nonattainment” and imposes more rigorous pollution control measures in “nonattainment” areas. See 42 U.S.C. §§ 7407(d), 7502.
In 2005, Congress amended the Clean Air Act to require EPA to promulgate regulations governing air quality monitoring during “exceptional events.” See 42 U.S.C. § 7619(b). The amended statute defined “exceptional event” as an event that “(i) affects air quality; (ii) is not reasonably controllable or preventable; (iii) is an event caused by human activity that is unlikely to recur at a particular location or a natural event; and (iv) is determined by the Administrator ... to be an exceptional event.” Id. § 7619(b)(1)(A). EPA published a final exceptional events rule, accompanied by a lengthy preamble, in March 2007. Treatment of Data Influenced by Exceptional Events, 72 Fed.Reg. 13,560 (Mar. 22, 2007) (codified at 40 C.F.R. §§ 50.1, 50.14, 51.930). The final rule’s definition of “exceptional events,” codified at 40 C.F.R. § 50.1(j), repeated the statutory language. In the next subsection, the rule defined “natural event”— as used in 42 U.S.C. § 7619(b)(l)(A)(iii)— as “an event in which human activity plays little or no direct causal role.” 40 C.F.R. § 50.1(k). The rule also provided that states may “flag” anomalous data caused by exceptional events, and that EPA will then review the flagged data and determine whether to exclude it from the set of data used in reviewing compliance with its air quality standards. 40 C.F.R. § 50.14.
NRDC argues against EPA’s definition of “natural event,” against its description in the rule’s preamble of a “final rule concerning high wind events,” and against its list, again in the preamble, of examples of potentially exceptional events.
II.
NRDC’s complaint is that EPA should not have defined “natural event” in 40 C.F.R. § 50.1(k) to include events in *563 which human activities play “little” causal role. As NRDC sees it, a “natural event” within the meaning of § 7619 is something that occurs without the slightest human influence. EPA says this objection was never raised during the rulemaking and is therefore barred.
Section 307 of the Clean Air Act states: “Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review.” 42 U.S.C. § 7607(d)(7)(B). Similar provisions are common with respect to other agencies. See Wash. Ass’n for Television & Children v. FCC, 712 F.2d 677, 682 n. 6 (D.C.Cir.1983). Their purpose is to ensure that the agency and other interested persons have been alerted to the commenter’s objection to the proposed rule. The agency then may correct or modify the rule it proposed or explain why it disagrees with the objection. See Motor & Equip. Mfrs. Ass’n v. Nichols, 142 F.3d 449, 462 (D.C.Cir.1998). Other parties also may contribute to the agency’s deliberations by endorsing or opposing the objection and by providing information and arguments in support of their position.
NRDC thinks the following portion of its nine-page, single spaced letter to EPA constituted an objection to EPA’s proposed definition of “natural event”:
Under no circumstance can the cleanup associated with a natural disaster itself be considered a “natural event.” EPA’s suggestion to the contrary flies in the face of the plain statutory language. The statute clearly and explicitly distinguishes between “natural event[s]” (events that do not have a human origin) and “events caused by human activity.” A natural event is one that is not the result of human activity ... While the level of human activity that discharges pollutants may increase in the wake of a natural disaster, emissions from cleanup activities (such as debris burning, operation of diesel equipment, and demolition activities) are clearly events caused by human activity, and may not be classified as “exceptional events” unless they meet each of the requirements of section 319 for qualifying anthropogenic events.
In short, the activities themselves that are responsible for the emissions (and possible violations of the NAAQS) are of human origin, and by definition not natural events. The fact that a natural event precipitates the need for human activity cannot and does not transform the human activity itself into a natural event. Thus, the Act clearly precludes EPA from identifying emissions from clean-up activities as “natural events” that qualify as exceptional events.
NRDC Comments, at 4-5.
Given the context, no EPA official would have guessed that NRDC was complaining about the agency’s proposed definition of “natural event.” Those familiar with the proceedings would have taken NRDC’s remarks as a criticism of the one sentence in the notice of proposed rulemaking dealing with clean-up activities after a natural disaster (such as the eruption of Mt. St. Helens in 1980 or Hurricane Katrina in 2005). The sentence read: “For the purpose of flagging, major natural disasters, such as hurricanes and tornadoes for which State, local, or Federal relief has been granted, and clean-up activities associated with these events may be considered exceptional events.” Treatment of Data Influenced by Exceptional Events, 71 Fed.Reg. 12,592, 12,596 (Mar. 10, 2006). It is not apparent that EPA even rested its view about clean-up activities on the proposed definition of “natural event” in 40 C.F.R. § 50.1(k) rather than on the clause in another proposed subsection defining *564 “exceptional events” to include human activities “unlikely to recur at a particular location,” id. § 50.1(j).
There are additional reasons why NRDC’s critique, quoted above, would not have alerted the careful reader to the complaint it now makes about § 50.1(k). NRDC’s comments said that a natural event could not have a “human origin” and could not be “the result of human activity.” These comments are not necessarily inconsistent with § 50.1(k)’s definition of natural events as ones in which human activity plays “little or no direct causal role.” No one would say that the “origin” of the tornado was human activity because the storm spread man-made air pollutants throughout the countryside. The definition of “natural event” in proposed § 50.1(k) was only a few words long, yet NRDC did not quote the portion it now finds objectionable. NRDC never even identified the rule by section number or placement in the notice of proposed rule-making. We have held that Section 307 of the Clean Air Act bars litigants from arguing against a particular section of a rule on judicial review if they failed to identify the particular section in their comments during the rulemaking. See Mossville Envtl. Action Now v. EPA, 370 F.3d 1232, 1240 (D.C.Cir.2004); Motor & Equip. Mfrs., 142 F.3d at 462. A citation to the section of the rule or a description of it may be all that is needed. If a comment lacking even that low level of specificity sufficed, the agency would be subjected to verbal traps. Whenever the agency failed to detect an obscure criticism of one aspect of its proposal, the petitioner could claim not only that it had complied with Section 307 but also that the agency acted arbitrarily because it never responded to the comment. Rulemaking proceedings and the legal doctrines that have grown up around them are intricate and cumbersome enough. Agency officials should not have to wade through reams of documents searching for “ ‘implied’ challenges.” Mossville, 370 F.3d at 1239. It is not too much to expect interested persons to point to the particular portion of the proposed rule they are arguing against.
It is worth adding that after EPA promulgated the final rule containing § 50.1(k) and its definition of “natural event,” NRDC filed a petition for reconsideration. In its petition NRDC spelled out for the first time its complaint about not excluding from “natural event” those events in which human activity had only a “little” causal effect. NRDC also explained that the grounds for its objection to § 50.1(k) “arose after the period for public comment and are of central relevance to the rule.” Petition for Reconsideration, In the Matter of the Final Rule: Treatment of Data Influence by Exceptional Events, No.2060-AN40 (E.P.A. May 21, 2007). This representation cuts against NRDC’s current position that it objected to § 50.1(k) during the comment period and is a further indication that NRDC failed to satisfy Section 307’s requirement.
III.
The balance of NRDC’s case deals not with the rules EPA promulgated but with its statements in the preamble to the rules. We have jurisdiction to review these statements only if they constitute final agency action. 42 U.S.C. § 7607(b)(1). A final agency action is one that marks the consummation of the agency’s decisionmaking process and that establishes rights and obligations or creates binding legal consequences. Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). While preamble statements may in some unique cases constitute binding, final agency action susceptible to judicial review, Kennecott Utah Copper Corp. v. Dep’t of Interior, 88 F.3d 1191, 1222-23 (D.C.Cir.1996), *565 this is not the norm. Agency statements “having general applicability and legal effect” are to be published in the Code of Federal Regulations. Federal Register Act, 44 U.S.C. § 1510(a)-(b); 1 C.F.R. § 8.1; see Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d 533, 539 (D.C.Cir.1986).
In one section of the preamble, EPA refers to its “final rule concerning high wind events,” which “states that ambient particulate matter concentrations due to dust being raised by unusually high winds will be treated as due to uncontrollable natural events” when certain conditions apply. 72 Fed.Reg. 13,560, 13,576. There is no such final rule. The final rule does not mention high wind events or anything about “ambient particulate matter concentrations.” EPA calls this a drafting error. In light of the error, the high wind events section of the preamble is a legal nullity. Agencies must publish substantive rules in the Federal Register to give them effect. 5 U.S.C. § 552(a)(1); Morton v. Ruiz, 415 U.S. 199, 233 & n. 27, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). An unpublished final rule on high winds can have no legal consequences, and neither can preamble statements mentioning such a rule. See Brock, 796 F.2d at 539. Because there was no “nationally applicable ... final action taken” by EPA, 42 U.S.C. § 7607(b)(1), there is nothing for this court to review.
The preamble also contains a list of “examples” of events that may be considered “exceptional” under the final rule. See 72 Fed.Reg. 13,560, 13,564-65. NRDC objects to these examples on the basis that they treat a variety of common events as per se exceptional in violation of 42 U.S.C. § 7619. We do not believe the statements in the preamble amounted to final agency action. EPA spoke in the conditional, suggesting that events in the various categories “may be exceptional events” or “may qualify for exclusion under this rule provided that all other requirements of the rule are met.” 72 Fed.Reg. at 13,564-65. Other statements were equivocal, such as the declaration, repeated several times in different forms, that certain events are to be evaluated “on a case-to-case basis.” Id. Giving “decisive weight to the agency’s choice between ‘may’ and ‘will,’ ” Brock, 796 F.2d at 538, we have held that similar statements are nonbinding and unreviewable. See Interstate Natural Gas Ass’n of Am. v. FERC, 285 F.3d 18, 60 (D.C.Cir.2002); Appalachian Power Co. v. EPA, 208 F.3d 1015, 1023 (D.C.Cir.2000).
Even if the statements in the preamble were renewable under the Clean Air Act, they are not ripe for review at this time. The statements about exceptional events are “hypothetical and non-specific.” Kennecott, 88 F.3d at 1223. NRDC has not demonstrated that any of the statements has immediate legal or practical consequences. How EPA will use or rely on or interpret what it said in the preamble is uncertain. See Kennecott, 88 F.3d at 1223; Pub. Citizen, Inc. v. U.S. Nuclear Regulatory Comm’n, 940 F.2d 679, 683 (D.C.Cir.1991). We can see no significant hardship to the parties from waiting for a real case to emerge. As EPA points out in its brief, the Clean Air Act “provides for judicial review of any EPA decision to determine the attainment status of an area, or to designate or redesignate an area, based on EPA’s decision to exclude exceptional events data or other information.” Resp’ts Br. at 39; cf. Clean Air Implementation Project v. EPA, 150 F.3d 1200, 1204 (D.C.Cir.1998).
The petitions for review are therefore dismissed.

So ordered.