**In re POLAR BEAR ENDANGERED SPECIES ACT LISTING AND § 4(d) RULE LITIGATION.**

**This Document Relates To:**

**Safari Club International, et al.**

**v.**

**Salazar, et al., No. 08–881 (EGS).**

**Misc. Action No. 08–764 (EGS).**
**MDL Docket No. 1993.**

United States District Court,
District of Columbia.

June 22, 2009.

Douglas Scott Burdin, Anna Margo Seidman, Safari Club International, John C. Martin, Benjamin Ellison, Patton Boggs LLP, Michael B. Wigmore, Bingham McCutchen LLP, Benjamin Longstreth, Natural Resources Defense Council, Jason C. Rylander, Defenders of Wildlife, Howard M. Crystal, Meyer Glitzenstein & Crystal, Washington, DC, Bradley E. Meyen, Assistant Attorney General, Department of Law, Anchorage, AK, Craig D. Galli, Holland & Hart LLP, Salt Lake City, UT, Murray D. Feldman, Holland & Hart LLP, Boise, ID, Brendan R. Cummings, Kassia R. Siegel, Center for Biological Diversity, Joshua Tree, CA, Andrew Elsas Wetzler, Rebecca Riley, Natural Resources Defense Council, Inc., Chicago, IL, Theodore Hadzi–Antich, Damien M. Schiff, M. Reed Hopper, Pacific Legal Foundation, Sacramento, CA, John J. Jackson,

III, Conservation Force, Metairie, LA, for Plaintiffs.

Guillermo A. Montero, Kristen Byrnes Floom, Clifford Eugene Stevens, Clifford Eugene Stevens, Jr., Erik Edward Petersen, U.S. Department of Justice, John F. Cooney, Margaret N. Strand, Venable, LLP, Rachel A. Dougan, Sidley Austin LLP, Washington, DC, Jeffrey M. Feldman, Kevin M. Cuddy, Feldman Orlansky & Sanders, Anchorage, AK, for Defendants.

## MEMORANDUM OPINION

EMMET G. SULLIVAN, District Judge.

Plaintiffs Safari Club International ("SCI") and Safari Club International Foundation ("SCIF") bring this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"), against defendants Ken Salazar, Secretary of the Interior, H. Dale Hall, Director of the United States Fish and Wildlife Service, and the United States Fish and Wildlife Service (collectively "FWS"), challenging the FWS's legal determination that the listing of the Polar Bear as threatened under the Endangered Species Act creates a ban on the import of sport-hunted polar bear trophies otherwise legal under the Marine Mammal Protection Act. Pending before the Court is defendants' Motion for Judgment on the Pleadings on the grounds that (1) plaintiffs fail to state a claim upon which relief can be granted, because plaintiffs fail to challenge a final agency action as required for judicial review under the APA; or, in the alternative, (2) plaintiffs lack standing to bring this action.[1] Upon

1. Defendants originally filed a Motion to Dismiss. Plaintiffs note that because defendants filed an Answer in response to plaintiffs' Complaint prior to filing their motion, defendants motion should be a motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Opposition of Plaintiffs Safari Club International and Safari Club International Foundation to Motion to Dismiss ("Pl. Opp'n.") at 6. Defendants do not dispute this and ask the

consideration of the defendants' motion, the plaintiffs' opposition, the defendants' reply, the relevant law, and for the reasons stated herein, the defendants' motion is **DENIED.**

## I. BACKGROUND

### A. Statutory Background [2]

The Endangered Species Act, 16 U.S.C. §§ 1531 et seq., was enacted in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species...." 16 U.S.C. § 1531(b). Once a species is listed as endangered or threatened, statutory prohibitions help ensure the survival and recovery of the species. An endangered species is "in danger of extinction throughout all or a significant portion of its range," while a threatened species is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(6), (20).

The ESA delegates authority to determine whether to list a species as endangered or threatened to the Secretaries of Commerce and Interior. The Secretary of the Interior has jurisdiction over the polar bear. 16 U.S.C. § 1532(15).

The Marine Mammal Protection Act ("MMPA"), 16 U.S.C. §§ 1361 et seq., was enacted in 1972 in response to a decline in marine mammal populations. Administration of the MMPA, like the ESA, is divided between the Department of the Interior and the Department of Commerce, and, as

with the ESA, the MMPA gives the Secretary of the Interior jurisdiction over the polar bear. 16 U.S.C. § 1362(12)(A).

The MMPA prohibits the taking or importation of marine mammals or marine mammal parts, unless a specified exception applies. 16 U.S.C. § 1371(a). The term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13). One exception to the general prohibition allows the Secretary of the Interior to issue permits authorizing the take of marine mammals for importation of polar bear parts taken in sport hunts in Canada, provided that specific requirements are met. 16 U.S.C. § 1374(c)(5). However, where the marine mammal at issue is "depleted," the MMPA further restricts the purposes for which such permits may be issued. 16 U.S.C. § 1371(a)(3)(B). Species that are listed as endangered or threatened under the ESA, such as the polar bear, are considered "depleted" for purposes of the MMPA. 16 U.S.C. § 1362(1)(C). Where a species is depleted, the Secretary may not allow importation "[e]xcept for scientific research purposes, photography for educational purposes, or enhancing the survival or recovery of [the] species or stock...." 16 U.S.C. § 1371(a)(3)(B). In addition, section 1372(b) of the MMPA contains additional restrictions on importations of a marine mammal from a species or stock that has been designated as depleted. That section reads in relevant part:

> Except pursuant to a permit for scientific research, or for enhancing the survival or recovery of a species or stock ...,

Court to treat their Motion to Dismiss as a motion for judgment on the pleadings. Federal Defendants' Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint ("Def. Reply").

2. The Statutory Background section is taken largely, and at times verbatim, from the discussion in defendants' Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint ("Def. Mem.") at 2–5.

it is unlawful to import into the United States any marine mammal if such mammal was—

. . .

(3) taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock; . . .

Accordingly, where a marine mammal is from a species or stock with a depleted status, Section 1372(b) allows importation only for purposes of scientific research or enhancement of the survival or recovery of the species or stock.

## B. Factual Background

### 1. The Final Rule

On May 15, 2008, the FWS issued a final rule listing the polar bear as a threatened species throughout its range. *See* 73 Fed. Reg. 28,212 (May 15, 2008) ("Final Rule"). In responding to comments the FWS had received regarding the proposed designation of the polar bear as a threatened species, the FWS noted in the Final Rule that

[U]nder the MMPA, the polar bear will be considered a 'depleted' species on the effective date of this listing. As a depleted species, imports could only be authorized under the MMPA if the import enhanced the survival of the species or was for scientific research. Therefore, authorization for the import of sport-hunted trophies will no longer be available under section 104(c)(5) of the MMPA.

73 Fed.Reg. at 28236. Moreover, in response to a comment that the FWS had not considered "the negative impacts of listing [the polar bear as threatened] on the long-term management of polar bears developed in Canada that intergrates susbistence harvest allocations with a token sport harvest[,]" the FWS stated

We acknowledge the important contribution to conservation from scientifically-based sustainable use programs. Significant benefits to polar bear management in Canada have accrued as a result of the 1994 amendments to the MMPA that allow U.S. citizens who legally sport-harvest a polar bear from an MMPA-approved population in Canada to bring their trophies back into the United States.

. . .

While we recognize these benefits, the Service must list a species when the best scientific and commercial information available shows that the species meets the definition of endangered or threatened. The effect of the listing, in this case an end to the import provision under Section 104(c)(5) of the MMPA, is not one of the listing factors. Furthermore, the benefits accrued to the species through the import program do not offset or reduce the overall threat to polar bears from loss of sea ice habitat.

*Id.* at 28242.

### 2. Plaintiff's Complaint

Plaintiffs bring this suit under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"), to challenge "the FWS's legal determination that the listing of the polar bear as threatened under the ESA creates a ban on the import of sport-hunted polar bear trophies otherwise legal under the MMPA." Compl. ¶ 2. According to the Complaint, SCI's mission's are "the conservation of wildlife, protection of the hunter, and education of the public concerning hunting and its use as a conservation tool." Compl. ¶ 15. SCI has approximately 53,000 members from the United States and around the world, many of whom have hunted polar bears and/or intend to hunt polar bears, and most of whom desire to import into the United

States the trophy of any polar bear they have harvested or will harvest. *Id.* SCI has a "sister organization," SCIF, created for the purpose of carrying out its conservation mission. *Id.* at ¶ 16.

SCI, SCIF, and SCI's members complain that they are adversely affected and aggrieved by the FWS's determination that imports of sport-hunted trophies from approved populations in Canada will no longer be allowed, and the agency's refusal to further process or accept applications for those import permits. *Id.* at ¶ 12. Plaintiffs also allege that SCI and SCIF's interests in polar bear conservation and management efforts, which they maintain are supported by U.S. sport hunters in Canada, are harmed by the FWS's determination because those sport hunters may abandon sport hunting of polar bears if the imports are not allowed. *Id.*

Plaintiffs ask this Court to (a) declare the FWS's determination erroneous; (b) set aside the portion of the Final Rule establishing the import ban; and (c) order the FWS to continue accepting and processing polar bear import permit applications under the MMPA and other applicable law. *Id.* at ¶ 9.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. "The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Rafeedie v. INS*, 795 F.Supp. 13, 18 (D.D.C. 1992). To survive a motion to dismiss, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," and give the defendant "fair notice of the claims

against him." *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C.Cir.2008) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 668–70 (D.C.Cir.2004) (quoting Fed.R.Civ.P. 8(a))). "A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is very remote and unlikely, and a complaint may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations." *Id.* (internal quotations and citations omitted). Furthermore, "the court must assume all the allegations in the complaint are true (even if doubtful in fact), and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

Defendants argue that they are entitled to judgment on the pleadings because (1) plaintiffs have failed to state a claim upon which relief can be granted because the action they challenge is not final agency action for purposes of the APA; and (2) because plaintiffs lack standing to challenge the statements in the Final Rule related to the importation of polar bear trophies. For the following reasons, the Court rejects both arguments.

### A. Failure to State a Claim

The APA requires that the agency action in question must be final before a party may seek judicial review. 5 U.S.C. § 704. As both parties point out, the Supreme Court has established a two-part test to determine when an agency action is considered "final" for purposes of judicial review. *See* Def. Mem. at 9 and Pl. Opp'n. at 8 (citing in *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d

281 (1997)). In *Bennett*, the Supreme Court held

> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decision-making process, . . .—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'

520 U.S. at 177–78, 117 S.Ct. 1154 (internal citations omitted).

■ Defendants maintain that plaintiffs are only challenging "isolated statements in the preamble to the final regulation discussing the separate issue of how the listing of the polar bear under the ESA may affect the Service's future enforcement of the MMPA." Def. Mem. at 9–10. Defendants argue that rather than the consummation of the agency's decision-making process on any particular application for an import permit, these statements simply discuss the applicability of the MMPA, "which the agency will implement in future decisions if necessary." *Id.* at 10. Defendants also contend that plaintiffs' challenge fails the second part of the *Bennett* test because the Final Rule did not itself deny any pending import applications and therefore does not determine plaintiffs' rights or obligations. *Id.* In other words, according to the defendants, the Final Rule "merely summarizes the legal provisions the Service will apply moving forward," *id.*, and does not have "any legal effect on Plaintiffs or their individual members[.]" *Id.* at 11.

Plaintiffs, on the other hand, insist that they are challenging a final agency action, i.e., the defendants' legal determination that by listing the polar bear as a threatened species, the FWS can no longer issue import permits under the MMPA. Plain-tiffs argue that although technically there may remain the additional step of the agency denying SCI members' permit applications, the FWS's determination in the Final Rule that import permits for polar bear trophies will no longer be granted is final for purposes of judicial review. This Court agrees.

In *Bennett v. Spear*, the FWS determined that a reclamation project undertaken by the Bureau of Reclamation ("Bureau"), another agency under the Secretary of the Interior's jurisdiction, would impact two species of endangered fish. The FWS issued a Biological Opinion identifying "reasonable and prudent alternatives" that the FWS believed would avoid harm to the fish, including maintenance of minimum water levels. 520 U.S. at 158–59, 117 S.Ct. 1154. The Bureau informed the FWS that it intended to operate the reclamation project in compliance with the terms of the Biological Opinion. *Id.* at 159, 117 S.Ct. 1154. Plaintiff ranch operators and irrigation districts sued the FWS and the Secretary of the Interior, but not the Bureau or its officials, challenging the Biological Opinion. *Id.* at 159, 117 S.Ct. 1154. Plaintiffs claimed that the "restrictions on water delivery 'recommended' by the Biological Opinion 'adversely affect plaintiffs by substantially reducing the quantity of available irrigation water[.]'" *Id.* at 160, 117 S.Ct. 1154 (internal citations omitted). The defendants moved to dismiss on the grounds that plaintiffs lacked standing and that the Biological Opinion was not final agency action for purposes of judicial review under the APA. *Id.* at 161, 117 S.Ct. 1154.

The defendants argued in *Bennett* that the Biological Opinion was not final agency action because it did not "conclusively determine how the reclamation project's water would be allocated." *Id.* at 177, 117

S.Ct. 1154. The Supreme Court rejected this argument, finding that it was "uncontested" that the Biological Opinion was the "consummation" of the agency's decisionmaking process—the first part of the two-part test for final agency action—and that the second part of the test was also met because "the Biological Opinion and accompanying Incidental Take Statement alter the legal regime to which the action agency is subject, authorizing it to take the endangered species if (but only if) it complies with the prescribed conditions." *Id.* at 178, 117 S.Ct. 1154. In other words, although there was another step between the Biological Opinion and the plaintiffs' alleged harm, i.e., the Bureau's compliance with the Biological Opinion, the Supreme Court determined that the Biological Opinion was final agency action for purposes of judicial review.

Similarly, in *Appalachian Power Co., et al. v. Environmental Protection Agency,* 208 F.3d 1015 (D.C.Cir.2000), the plaintiffs challenged a Periodic Monitoring Guidance issued by the Environmental Protection Agency that allegedly required states to take certain action in connection with operating the states' permit programs under the Clean Air Act. The defendant Environmental Protection Agency argued that the Guidance was not final agency action for purposes of judicial review. The Court of Appeals for the District of Columbia Circuit rejected that argument.

The short of the matter is that the Guidance, insofar as relevant here, is final agency action, reflecting a settled agency position which has legal consequences both for State agencies administering their permit programs and for compa-

nies like those represented by petitioners who must obtain Title V permits in order to continue operating.

208 F.3d at 1023.

As plaintiffs SCI and SCIF correctly point out in their opposition to defendants' motion, "here, if anything, the legal determination SCI and SCIF are challenging is even more final, as it definitively establishes that any applications for a Section 104(c)(5) permit will not be granted[,]" whereas in *Bennett* the Bureau could at least theoretically have chosen not to follow the Biological Opinion's restrictions. Pl. Opp'n. at 10. Moreover, like the Guidance at issue in *Appalachian Power,* the FWS's determination regarding the import ban reflects "a settled agency position which has legal consequences both for" the agency administering the MMPA and for plaintiffs' members "who must obtain [import] permits in order to continue" importing polar bear trophies. 208 F.3d at 1023. In fact, the defendants themselves attached to their motion a letter dated July 29, 2008, from the FWS to an individual who had submitted an application for an import permit, which demonstrates this point.[3] The letter refers to the Final Rule and then states,

We are writing to inform you that as of the effective date of the listing, May 15, 2008, importation of a polar bear from Canada as a sport-hunted trophy that was taken after February 18, 1997, is no longer an activity that can be authorized under the Marine Mammal Protection Act (MMPA). Therefore, we are unable to continue processing the application

**3.** To be clear, the Court need not, and does not, rely on this letter to reach its conclusion that the challenged action in this case is final agency action. However, because defendants have included the letter "for the Court's information," *see* Def. Mem. at 11, n. 2, the Court

will reference the letter to illustrate the FWS's position that the Final Rule precludes the granting of any permit to import a sport-hunted polar bear trophy into the United States.

that you submitted to the U.S. Fish and Wildlife Service.

. . .

Since there is no permit authorization available to conduct your requested activity, we are administratively closing your application file and returning the $100.00 permit application processing fee you submitted with your application.

. . .

In the future, should the MMPA be amended in a manner that would allow for the importation of polar bear sport-hunted trophies, we encourage you to submit a new permit application to our office.

Def. Mem. Ex. 1 (July 29, 2008 Letter from Timothy J. Van Norman, Chief, Branch of Permits, Fish and Wildlife Service to import applicant (recipient's name and address redacted)).

The letter expressly states the FWS's position that in view of the Final · Rule, sport-hunted polar bear trophy importation "is no longer an activity that can be authorized under the Marine Mammal Protection Act," and, as a result, the application file is being administratively closed. The language in the Final Rule is not of a "merely tentative or interlocutory nature[,]" but rather represents the " 'consummation' of the agency's decisionmaking process" and, as that language and the July 29, 2008 letter clearly indicate, the Final Rule is "one by which 'rights or

obligations have been determined,' " specifically, the right to obtain an import permit. *See Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154 (internal citations omitted).[4]

Accordingly, this Court finds that the action challenged by SCI and SCIF is final agency action for purposes of judicial review pursuant to the APA.

**B.  STANDING**

■  Defendants argue in the alternative that plaintiffs' suit must be dismissed for lack of standing because plaintiffs have not alleged facts to establish that they have suffered an injury-in-fact that is fairly traceable to the challenged action.  To satisfy Article III of the Constitution's "case" or "controversy" requirement, a plaintiff ordinarily must establish that (1) he or she has "suffered an 'injury-in-fact' "; (2) there is a "causal connection between the injury and the conduct complained of"; and (3) the injury will likely be 'redressed by a favorable decision[.]' "  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendants maintain that plaintiffs have not met any of these three requirements and, in addition, that as an associational plaintiff SCI lacks standing because it cannot establish that "at least one of its members would have standing to sue in his own right[.]"  *See Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C.Cir.2002).

---

4.  On March 24, 2009, defendants filed a Notice of Supplemental Authority, citing *Natural Resources Defense Council v. EPA,* 559 F.3d 561 (D.C.Cir.2009) (*"NRDC "*), as support for their position that the statements in the Final Rule regarding the import ban are not final agency action.  In *NRDC,* however, the Court of Appeals for the D.C. Circuit found that in the preamble that plaintiff challenged, the agency "spoke in the conditional, suggesting that events in the various categories 'may be exceptional events' or 'may qualify for exclusion under this rule provided that all other

requirements are met.' "  559 F.3d at 565 (citing 72 Fed.Reg. 13,564–65)(May 15, 2008). The court also found that "[o]ther statements were equivocal, such as the declaration, repeated several times in different forms, that certain events are to be evaluated 'on a case-to-case basis.' "  *Id.* In contrast, the language the FWS used in the Final Rule and in the letter quoted herein is not in the least "conditional" or "equivocal," and there is no indication that permit applications to import sport-hunted polar bear trophies will be evaluated on a "case-to-case basis."

At the outset, the Court notes that because the case is "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss[, similar to a motion for judgment on the pleadings,] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *See Bennett,* 520 U.S. at 168, 117 S.Ct. 1154 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Here, SCI and SCIF have plead general factual allegations of injury resulting from the Final Rule sufficient to overcome the defendants' motion for judgment on the pleadings.

### 1. Plaintiffs' Allegations of an Injury–In–Fact

■ Defendants argue that plaintiffs have not alleged that the Final Rule itself operated as a denial of any permit application by an SCI member or that plaintiffs have suffered actual or imminent injury. Def. Mem. at 12–13. Instead, defendants contend that the plaintiffs' injury "stems from the possibility that the Service will act in accordance with the statements in the Final Rule regarding the MMPA's restrictions, thereby denying import applications from Plaintiff's members." In addition, defendants argue that plaintiffs cannot rely on a "procedural injury"—based on plaintiffs' allegation that the FWS violated the APA by failing to give the public adequate notice and opportunity to comment on the issue of whether the polar bear is depleted under the MMPA—because plaintiffs have not established that the "procedures in question are designed to protect some threatened concrete interest of [plaintiffs] that is the ultimate basis of

[their] standing." Def. Mem. at 14 (quoting *Lujan,* 504 U.S. at 573, n. 8, 112 S.Ct. 2130 and citing *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664 (D.C.Cir.1996)).

Plaintiffs' Complaint alleges that since 1994, over 900 permits to import sport hunted-trophies have been issued by the FWS, resulting in over $900,000 for polar bear research and management programs. Compl. ¶ 30. Plaintiffs claim that in March, April, and May of 2008, SCI members have successfully sport-hunted polar bears from several of the Canadian polar bear populations approved for imports under the MMPA, and that many of these members submitted applications to import polar bear trophies into the United States. *Id.* at ¶ 4. According to plaintiffs, other members of SCI who had successfully hunted polar bears during this time period have not yet submitted their applications to FWS, and that "on information and belief," the FWS has informed SCI members that it will not be processing any permit applications to allow the import of polar bear trophies now that the species is listed as "threatened" under the ESA. *Id.*

As for particularized interests with respect to their procedural claim, plaintiffs also complain that the FWS's actions harm SCI and SCIF's interests in polar bear conservation and management efforts, because U.S. hunters may abandon sport-hunting of polar bears if imports are not allowed. Compl. ¶¶ 12, 17. Plaintiffs allege a direct injury to their conservation and management interest because U.S. hunters pay $40,000 to $50,000 per polar bear hunt, and much of those funds go the local native communities, providing "another incentive for these people to accept the Western-based science and management that facilitates polar bear conservation and that is required before the Service will approve a population for import." *Id.* at

¶ 42. Plaintiffs note that the FWS has itself recognized the benefits of sport hunting of polar bears and that the plaintiffs commented on the proposed listing at every available opportunity for public comments during the rulemaking process. *Id.* at ¶¶ 18, 42. Some SCI members have scheduled and even paid for polar bear hunts in 2009 and 2010, and still others may decide not to plan hunts because they will no longer be permitted to import any trophy they may obtain if the hunt is successful. *Id.* at ¶ 39.

In *Bennett*, the Supreme Court found that the plaintiff ranch operators and irrigation districts had established an injury-in-fact when the Biological Opinion was issued, despite the existence of an additional step between the agency's action and the plaintiffs' injury—that is the Bureau complying with the Biological Opinion—and the possibility (which does not exist in this case) that the Bureau might not follow the Biological Opinion. As with the *Bennett* plaintiffs, SCI and SCIF have sufficiently plead an injury-in-fact, and they are not required to wait for the inevitable formal denial of their permit applications. Moreover, plaintiffs have sufficiently plead that the "procedures in question" threaten a "concrete interest," i.e., an interest in conservation that is impacted by the import ban.

## 2. The Causal Connection Between the Alleged Injury and the Defendants' Conduct

■ Defendants next argue that plaintiffs cannot establish a causal connection between their alleged injury and the defendants' conduct because "plaintiffs' allegations of harm hinge on speculation regarding the Service's future actions[.]" Def. Mem. at 16 (citing *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C.Cir. 1989)) (court may "reject as speculative

allegations of future injuries"). This argument is belied by the very language in the Final Rule:

> We note that, under the MMPA, the polar bear will be considered a "depleted" species on the effective date of this listing. As a depleted species, imports could only be authorized under the MMPA if the import enhanced the survival of the species or was for scientific research. Therefore, authorization for the import of sport-hunted trophies will no longer be available under section 104(c)(5) of the MMPA.

73 Fed.Reg. at 28236. Plaintiffs' allegations that SCI members can no longer obtain import permits are not "speculative"; the Final Rule makes clear that the only possible response an individual applying for a permit to import a sport-hunted polar bear trophy can reasonably expect to receive is a denial of his or her application. In other words, the Final Rule is determinative. Therefore, plaintiffs have satisfied the causal connection requirement. *See, e.g., Bennett*, 520 U.S. at 170–71, 117 S.Ct. 1154 (finding that plaintiffs had met their "relatively modest" burden at the pleading stage to establish a causal connection between their alleged injury and the agency's action, in view of the "powerful coercive" and "virtually determinative" effect that the FWS's Biological Opinion would inevitably have on the manner in which the Bureau would operate the project at issue).

## 3. Whether the Alleged Injury Would Be Redressed By A Favorable Decision

■ Finally, defendants argue that the "broad relief" sought by plaintiffs, i.e., setting aside the portions of the preamble to the Final Rule and enjoining the FWS from refusing to process import applications, would be "inappropriate." According to the defendants, if the FWS denies specific applications, the plaintiffs must

seek judicial review of the denials pursuant to the MMPA's statutory scheme.

Plaintiffs respond that the review procedures for a denial of an individual permit application under the MMPA are not an adequate substitute for an APA challenge to a rule that impacts numerous people. Nor would those procedures address the injuries of SCI members who have hunted polar bears but have not applied for a permit because such an application would be futile, or who must decide whether to book or cancel a hunt without the ability to import any resulting trophy. The Court agrees. In *Bennett*, the Supreme Court found that setting aside the Biological Opinion would likely redress the plaintiff's injury because if the Biological Opinion was set aside, the Bureau would not impose the water level restrictions advised by that opinion. 520 U.S. at 171, 117 S.Ct. 1154. Similarly, this Court finds that if plaintiffs were to prevail on their claims and the Court were to enjoin the FWS from denying the import applications based on the Final Rule, plaintiffs' injuries would be redressed.

## IV. CONCLUSION

For the reasons stated herein, the defendants' Motion for Judgment on the Pleadings is **DENIED.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

