ROGERS, Circuit Judge,
dissenting:
To vacate the Transport Rule, the court disregards limits Congress placed on its jurisdiction, the plain text of the Clean Air Act (“CAA”), and this court’s settled precedent interpreting the same statutory provisions at issue today. Any one of these obstacles should have given the court pause; none did. The result is an unsettling of the consistent precedent of this court strictly enforcing jurisdictional limits, a redesign of Congress’s vision of cooperative federalism between the States and the federal government in implementing the CAA based on the court’s own notions of absurdity and logic that are unsupported by a factual record, and a trampling on this court’s precedent on which the Environmental Protection Agency (“EPA”) was entitled to rely in developing the Transport Rule rather than be blindsided by arguments raised for the first time in this court.
Congress has limited the availability of judicial review of challenges to final rules promulgated by the EPA in two ways that are relevant here. Under CAA section 307(b)(1), 42 U.S.C. § 7607(b)(1), petitions for judicial review must be filed within sixty days of promulgation of a final rule, and under CAA section 307(d)(7)(B), 42 U.S.C. § 7607(d)(7)(B), “[o]nly an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment ... may be raised during judicial review.” The court has, until today, strictly enforced these requirements, which exist for two important reasons: to enforce repose so that the rule-making process is not crippled by surprise challenges to matters that were rightfully presumed settled, and to guarantee an agency’s expert consideration and possible correction of any flaws in its rules before the matter reaches a court. Instead the court casts aside both jurisdictional provisions, upending these two fundamental principles. In so doing, the court thus fails to “maintain uniformity of the court’s decisions” on these “question[s] of excep *39 tional importance.” Fed. R.App. P. 35(a)(1) &(2).
As one basis underlying its vacatur of the Transport Rule, the court permits a collateral attack on prior final rules in which EPA disapproved state implementation plan (“SIP”) submissions with respect to the “good neighbor provision,” CAA § 110(a)(2)(D)(i)(P, 42 U.S.C. § 7410(a)(2)(D)(i)(I), or found States failed to submit such a SIP at all. In those Final SIP Rules, EPA unambiguously stated its interpretation that States had an independent obligation under section 110(a) to submit “good neighbor” SIPs regardless of whether EPA first quantified each State’s emission reduction obligations. Under section 307(b)(1), States had sixty days to seek judicial review of those Final SIP Rules to challenge EPA’s interpretation of section 110(a). EPA’s authority to promulgate the federal implementation plans (“FIPs”), pursuant to section 110(c), in the Transport Rule was triggered by EPA having published those Final SIP Rules, and under section 307(b)(1) States may not collaterally attack the propriety of those Final SIP Rules now. This is not a mere technicality — EPA developed and promulgated the Transport Rule with the knowledge that all but three States did not seek judicial review of its interpretation of section 110(a) and in light of this court’s opinion in North Carolina v. EPA, 531 F.3d 896 (D.C.Cir.2008). The court therefore lacks jurisdiction under section 307(b)(1) to consider States’ belated challenge to EPA’s interpretation of section 110(a) as part of its review of the Transport Rule; the petitions challenging the Final SIP Rules filed by three States are not consolidated with the petitions challenging the Transport Rule, as they involve separate provisions of the CAA and different final rules. The court glosses over the plain text and structure of section 110 to avoid that reality, and in the process rewrites sections 110(a) and 110(c), altering the triggering mechanism for States’ obligations to submit “good neighbor” SIPs and EPA’s obligation to promulgate FIPs, based on its own speculative conclusion that the process Congress adopted is “impossible” for States to follow. To reach its conclusion, the court today holds that the CAA requires what it previously held the CAA ambiguously permits EPA to do.
As another ground to vacate the Transport Rule, the court concludes that, under EPA’s two-step approach to defining “significant contribution” under the “good neighbor” requirement in section 110(a)(2)(D)(i)(I), a State “may be required to reduce its emissions by an amount greater than the ‘significant contribution’ that brought it into the program in the first place.” Op. at 25. No objection was made during the Transport Rule administrative proceedings to EPA’s approach, let alone its statutory authority, to use different, unrelated measures of significance for inclusion and budget-setting. Acknowledging this, the court reaches beyond the Transport Rule administrative record, despite section 307(d)(7)(B)’s clear command, to find jurisdiction. But the three reasons it offers do not add up. By suggesting that EPA acted inconsistently with North Carolina in adopting a two-step approach, with different, unrelated measures of “significant contribution” for inclusion and budget-setting, the court ignores that in North Carolina this court expressly declined to disturb that same approach. 531 F.3d at 916-17. In relying on a comment expressing a policy preference made during the administrative proceedings of the predecessor of the Transport Rule (to which petitioners failed to alert the court until rebuttal oral argument), the court ignores that the comment does not challenge EPA’s statutory authority to pursue *40 its two-step approach, and the fact that no one petitioned the court in North Carolina for judicial review based on that comment, which is why the court in North Carolina left that approach undisturbed, see id. The court also ignores that the prior rule-making docket was not incorporated into the Transport Rule administrative proceedings. Together, these “ignored” facts demonstrate that EPA had no reason to suspect any party before it in the Transport Rule administrative proceedings subscribed to the objection stated in the old comment, nor even to locate and consider that comment. Finally, EPA’s rejection on technical grounds of alternative approaches for measuring “significant contribution” based solely on air quality, not cost and air quality, during the Transport Rule administrative proceedings says nothing about whether EPA would have refused to entertain petitioners’ new objection in this court that EPA was statutorily required to modify its two-step approach by making the inclusion threshold of step-one a floor for reductions under the cost approach of step-two. The alternative approaches EPA considered and rejected are not even the approaches petitioners now endorse, and, in any event, cannot excuse a failure to state their objection with “reasonable specificity” during the Transport Rule administrative proceedings.
The court’s remaining reasons for vacatur lack merit. First, the court concludes EPA violated the “good neighbor” provision’s “proportionality” requirement, but petitioners presented no such statutory authority argument in their briefs, instead challenging EPA’s grouping of States for purposes of S02 reduction as arbitrary and capricious. Even if they had, the court lacks jurisdiction because the argument is premised on speculation that EPA’s two-step approach to measuring “significant contribution” might require States to reduce emissions by more than the amount that triggered their inclusion in the Transport Rule in the first place — the same argument over which the court lacks jurisdiction due to petitioners’ failure to challenge EPA’s statutory authority for its approach during the Transport Rule administrative proceedings. On the merits, the court’s “proportionality” conclusion contradicts the court’s opposite conclusion in North Carolina that EPA’s measurement of a State’s “significant contribution” did not have to correlate directly with its air quality impact “relative to other upwind states.” 531 F.3d at 908 (citing Michigan v. EPA, 213 F.3d 663, 679 (D.C.Cir.2000)). Similarly, the court’s holding that EPA failed to consider the effect of in-state emissions is likewise premised on the sub-threshold argument. Further, the court’s “in-State emissions” and its “over-control” conclusions are contradicted by the Transport Rule administrative record.
I.
Section 307(b)(1) of the CAA, 42 U.S.C. § 7607(b)(1), requires a petition for judicial review of EPA final actions to be filed within sixty days of publication in the Federal Register. “The filing period in the Clean Air Act ‘is jurisdictional in nature’; if the petitioners have failed to comply with it, we are powerless to address their claim.” Med. Waste Inst. & Energy Recovery Council v. EPA, 645 F.3d 420, 427 (D.C.Cir.2011) (quoting Motor & Equip. Mfrs. Ass’n v. Nichols, 142 F.3d 449, 460 (D.C.Cir.1998)).
The Supreme Court has explained that “judicial review provisions are jurisdictional in nature and must be construed with strict fidelity to their terms. This is all the more true of statutory provisions specifying the timing of review, for those time limits are, as we have often *41 stated, mandatory and jurisdictional, and are not subject to equitable tolling.”
Slinger Drainage, Inc. v. EPA, 237 F.3d 681, 682 (D.C.Cir.2001) (quoting Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (internal quotation marks, alterations, and citation omitted)). Accordingly, in Medical Waste this court dismissed a challenge to a final rule for lack of jurisdiction where petitioners failed to seek judicial review when EPA “first usefdits statutory approach, 645 F.3d at 427 (emphasis added). “An objection is considered a collateral attack only if ‘a reasonable [petitioner] ... would have perceived a very substantial risk that the [rule] meant what the [agency] now says it meant.’ ” S. Co. Servs., Inc. v. FERC, 416 F.3d 39, 45 (D.C.Cir.2005) (internal quotations marks, citation, and alterations omitted).
The Transport Rule, responding to States’ failures to submit adequate “good neighbor” SIPs, is a FIP that addresses the interstate transport of emissions in twenty-seven States in the eastern United States for three national ambient air quality standards (“NAAQS”): the 1997 8-hour ozone NAAQS, the 1997 annual PM2.5 NAAQS, and the 2006 24-hour PM25 NAAQS.[1] See Transport Rule, 76 Fed. Reg. 48,208 (Aug. 8, 2011). In the Transport Rule, EPA determined that the same level of emission reduction obligations would apply for each of these three NAAQS. See id. at 48,264. Over a year prior to promulgating the Transport Rule, EPA promulgated Final SIP Rules publishing findings that twenty-nine States and territories had failed to submit SIPs with the required “good neighbor” provisions for the 2006 24-hour PM2.5 NAAQS.[2] See Failure to Submit Good Neighbor SIP Finding, 75 Fed. Reg. 32,673 (June 9, 2010); Tennessee Failure to Submit Good Neighbor SIP Finding, 76 Fed. Reg. 43,-180 (July 20, 2011). In these Final SIP Rules, EPA stated:
This finding establishes a 2-year deadline for promulgation by EPA of a FIP, in accordance with section 110(c)(1), for any state that either does not submit or EPA can not approve a SIP as meeting the attainment and maintenance requirements of [the “good neighbor” provision] for the 2006 24-hour PM25 NAAQS.... This action ... does not pertain to ... a SIP Call pursuant to section 110(k)(5).
Id. at 32,674; see also 76 Fed. Reg. at 43,180-81 (Tennessee). The Final SIP *42 Rules further state that the findings of failure to submit were of nationwide scope and effect, and therefore pursuant to section 307(b)(1), 42 U.S.C. § 7607(b)(1), a petition for judicial review had to be filed with the D.C. Circuit within sixty days of the publication of the findings in the Federal Register. See Failure to Submit Good Neighbor SIP Finding, 75 Fed. Reg. at 32,675-76; Failure to Submit Good Neighbor SIP Finding (Tennessee), 76 Fed. Reg. at 43,182-83. No State filed a petition for judicial'review.
Other States submitted 2006 24-hour PM2.6 SIPs with “good neighbor” provisions, but EPA disapproved that portion of the SIP submissions of ten States covered by the Transport Rule: Alabama, Georgia, Indiana, Kansas, Kentucky, Missouri, New Jersey, New York, North Carolina, and Ohio.[3] In the Final SIP Rules, EPA rejected objections that States had no obligation to submit SIPs until EPA had quantified the States’ amount of “significant contribution” and that EPA was required to permit States to revise their SIPs prior to imposing a FIP pursuant to 42 U.S.C. § 7410(c)(1).[4] The Final SIP Rules disapproving the “good neighbor” SIP submissions alerted the affected States that “petitions for judicial review must be filed in the United States Court of Appeals for the appropriate circuit by September 19, 2011,” see, e.g., 76 Fed. Reg. at 43,136 (Alabama), the sixty day deadline prescribed by CAA section 307(b)(1), 42 U.S.C. § 7607(b)(1). Only Georgia, Kansas, and Ohio filed petitions for judicial review of EPA’s disapproval action and their petitions are not consolidated with the petitions now under review, as they challenge different final rules.[5]
A.
Now that EPA has, as it warned, promulgated FIPs for States covered by the Transport Rule, State petitioners contend that EPA lacked authority to do so for the 2006 24-hour PM2.5 NAAQS because “a FIP can cure a deficiency only in a required submission, and States were not required to include SIP provisions to eliminate ‘significant contributions’ not yet defined by EPA legislative rule.” State Petrs’ Br. at 31. If a State wished to *43 object that under section 110(a) it had no obligation to include “good neighbor” provisions in its SIP until EPA quantified its “significant contribution” in emission reduction budgets, then the CAA required it do so at the time EPA found it had not met its SIP “good neighbor” obligation. State petitioners offer no response in their reply brief to EPA’s position that this argument is a collateral attack barred by section 307(b)(1). See Resp.’s Br. at 46-47.
Ignoring the plain terms of section 307(b)(1) as well as this court’s long-settled precedent, the court reaches the merits of this issue despite its lack of jurisdiction. In the Final SIP Rules finding States had failed to submit “good neighbor” SIPs, EPA put covered States on unambiguously “sufficient notice” that it interpreted the CAA as placing an independent obligation on each State to include adequate “good neighbor” provisions in its SIP regardless of whether EPA had prospectively quantified its amount of “significant contribution.” S. Co. Servs., 416 F.3d at 44. By the very nature of the Final SIP Rules, EPA was informing States that they had not met their obligation to submit “good neighbor” SIPs, an obligation States now contend they never had. Furthermore, EPA warned that its findings of failure to submit triggered the two-year FIP clock of section 110(c)(1), and not the SIP Call provision of section 110(k)(5). See Failure to Submit Good Neighbor SIP Finding, 75 Fed. Reg. at 32,673-74; Failure to Submit Good Neighbor SIP Finding (Tennessee), 76 Fed. Reg. at 43,180-81. In alerting States to the judicial review deadline, EPA reiterated that States had sixty days to file “any petitions for review ... related to [ ] findings of failure to submit SIPs related to the requirements of [the ‘good neighbor’ provision].” Failure to Submit Good Neighbor SIP Finding, 75 Fed. Reg. at 32,676; Failure to Submit Good Neighbor SIP Finding (Tennessee), 76 Fed. Reg. at 43,183 (emphases added). Not having sought judicial review of the Final SIP Rules determining that they failed to submit required “good neighbor” SIPs, States may not now object that they were not required to submit “good neighbor” SIPs until EPA first quantified their reduction obligations. “The sixty day window provided by statute has long since closed, and we may not reopen it and entertain a belated challenge ... now.” Med. Waste, 645 F.3d at 427. Therefore, the court lacks jurisdiction over the collateral attacks by petitioners Louisiana, Michigan, Nebraska, Oklahoma, Virginia, and Wisconsin, as part of the Transport Rule petitions, on EPA’s interpretation of section 110(a) stated in the Final SIP Rules finding they failed to submit required “good neighbor” SIPs.
Similarly on notice, neither Alabama nor Indiana petitioned for judicial review of EPA’s disapproval of their SIP submissions. In the Final SIP Rule disapproving Alabama’s SIP submission, EPA quotes one commenter as stating:
EPA has not stated the amount of reduction they believe is needed to satisfy the transport requirements.... [T]he finish line isn’t even knowable (because EPA refuses to inform the states how much reduction is enough to satisfy the requirements). EPA seems to say that it has to be whatever the final Transport Rule says, even though there is no final Transport Rule.
76 Fed. Reg. at 43,131. EPA responded that “the state obligation stems from the CAA itself.... States had an opportunity to conduct their own analyses regarding interstate transport.” Id. (emphasis added). EPA also warned that it was obligated to promulgate a FIP within two years of disapproving Alabama’s SIP, see id. at 43,132, and rejected comments that the *44 SIP Call revision process of section 110(k)(5) should apply, because, in its view, that provision applies only where there is an existing, approved SIP, see id. at 43,-133. In its summary of Indiana’s comments on the proposed disapproval of its SIP submission, EPA noted that Indiana took the position that EPA “should provide [the State] the opportunity to revise its [ ] SIP once the Transport Rule is completed” and that a “FIP is [ ] contrary to the spirit of the CAA by unnecessarily limiting [S]tate authority.” 76 Fed. Reg. at 43,177. EPA responded, relying on the CAA’s plain text, that Indiana was required by section 110(a) to submit SIPs with adequate “good neighbor” provisions, and that upon disapproving its submission, EPA had a legal obligation under the CAA to promulgate a FIP. See id. Alabama and Indiana’s comments, along with EPA’s responses, demonstrate that the two States were on clear notice of EPA’s interpretation of the CAA as imposing an independent obligation on the States to submit “good neighbor” SIPs, even in the absence of EPA-quantified amounts of “significant contribution.” Yet neither Alabama nor Indiana sought judicial review of EPA’s Final SIP Rules disapproving their SIP submissions, and their attempt now to collaterally attack those Final SIP Rules is barred. See Med. Waste, 645 F.3d at 427.
Given EPA’s clear statements in its Final SIP Rules disapproving States’ SIP submissions and finding they failed to submit required “good neighbor” SIPs, there is no basis to conclude that State petitioners might not have perceived a substantial risk that EPA meant what it said. See S. Co. Servs., 416 F.3d at 45. The instant case, involving consolidated petitions challenging the Transport Rule, is therefore not the appropriate forum to decide whether, under section 110(a), States have an independent obligation to submit “good neighbor” SIPs when EPA has not first quantified amounts of “significant contribution.” EPA promulgated Final SIP Rules in which it made its interpretation clear; judicial challenge to those rules is the proper forum to decide the question.[6]
Indeed, the court itself forecasts this conclusion: “EPA’s many SIP disapprovals and findings of failure to submit share one problematic feature: EPA made all of those findings before it told the States what emission reductions their SIPs were supposed to achieve under the “good neighbor” provision.” Op. at 31-32 (emphasis in original). However “problemat *45 ic” the court views this “feature” of those Final SIP Rules, this is a “problem” this three-judge panel is powerless to resolve because it lacks jurisdiction under CAA section 307(b)(1) to entertain State petitioners’ “back-door challenge” to EPA’s interpretation of section 110(a) stated in those Final SIP Rules. Natural Res. Def. Council v. EPA, 824 F.2d 1146, 1150 (D.C.Cir.1987) (internal quotation marks omitted).
The court responds that the dissent “conflates” State petitioners’ collateral attack on the Final SIP Rules announcing their Section 110(a) SIP obligations with State petitioners’ supposedly distinct argument that EPA cannot promulgate a FIP simultaneously with its quantification of a State’s emission reduction obligations. See Op. at 12 n.l, 37 n.34. This response misleadingly quotes the statute, and in the process, proves the dissent’s point. The court states “the statute says that EPA must issue a FIP within two years after a State fails to make a ‘required submission’ or submits a deficient SIP. But a State cannot be ‘required’ to implement its “good neighbor” obligation in a SIP ‘submission’ ... until it knows the target set by EPA.” Id. at 37 n.34.[7] That is not what the statute says. Section 110(c) provides that:
(1) The Administrator shall promulgate a Federal implementation plan at any time within 2 years after the Administrator—
(A) finds that a State has failed to make a required submission ... or
(B) disapproves a State implementation plan submission in whole or in part; unless the State corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such Federal implementation plan.
42 U.S.C. § 7410(c)(1) (emphases added). EPA’s FIP obligation is therefore not triggered, without more, by a State’s mere failure to submit a SIP required by section 110(a), but instead by an explicit EPA Final Rule finding that the State either failed to submit a required SIP or an adequate SIP. A challenge to EPA’s interpretation of section 110(a) must therefore be brought as a petition for judicial review of those Final SIP Rules announcing that States failed to meet their section 110(a) “good neighbor” SIP obligations. See Med. Waste, 645 F.3d at 427. Under the plain terms of the CAA, EPA’s obligation (and authority) to promulgate a FIP is triggered by those Final SIP Rules, and the process by which EPA must promulgate a FIP is governed by section 110(c), not, as the court posits, by section 110(a). The court therefore, and not the dissent, does the conflating by turning what should be a challenge to EPA’s FIP authority under section 110(c) into a collateral attack on EPA’s interpretation of section 110(a) set forth in the prior Final SIP Rules.
The plain text of section 110(c)(1) obligates EPA to promulgate a FIP “at any time” within two years of disapproving a SIP submission or finding a State failed to submit a SIP. 42 U.S.C. § 7410(c)(1). Moreover, nothing in section 110(c) requires EPA to reveal to States the content (i.e., the emission reduction budgets) it intends to include in its FIP prior to pro *46 posing a FIP. Although the CAA allows States to submit SIPs to “correct[] the deficiency,” they must do so “before” EPA’s promulgation of a FIP, which may occur “at any time” within two years. Id.
The court thus rewrites section 110(c)(l)’s unambiguous grant of authority to EPA (and ultimate obligation of EPA) to promulgate a FIP at any time within the two year window to read: “unless but not until the State corrects the deficiency and the Administrator approves the [SIP] or [SIP] revision, before may the Administrator promulgates such [FIP].” “[A]s the Supreme Court has emphasized time and again, courts have no authority to rewrite the plain text of a statute.” Kay v. FCC, 525 F.3d 1277, 1279 (D.C.Cir.2008). Because the CAA “means what it says,” EPA was required, after publishing disapprovals and findings of failure to submit SIPs, to promulgate FIPs within two years, and it was not required to wait for States first to submit SIPs. Landstar Express Am. v. Fed. Maritime Comm’n, 569 F.3d 493, 498 (D.C.Cir.2009). The court’s attempt to ferret out an argument about “simultaneity” as a distinct challenge properly brought against the Transport Rule based on EPA’s interpretation of section 110(a) is thus a straw man for its endorsement of State petitioner’s collateral attack on EPA’s interpretation of section 110(a) in the Final SIP Rules. Its rewriting of section 110(c) is made all the more remarkable by its recognition that “we must apply and enforce the statute as it’s now written.” Op. at 12.
B.
Even if the court had jurisdiction over State petitioners’ challenge to their independent obligation to submit “good neighbor” SIPs under CAA section 110(a), its statutory analysis proceeds with no regard for the plain text and structure of the CAA or for the deference owed to permissible agency interpretations of statutes they administer where Congress has left a gap for the agency to fill or the statute is ambiguous.
“As in all statutory construction cases,” the court must “begin with the language of the statute.” Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). “[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Id. at 461-62, 122 S.Ct. 941 (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (internal quotation marks and citation omitted)). Thus, under Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the first step in statutory interpretation requires a determination of “whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress,” id. If, after applying traditional tools of statutory construction, the court determines “the statute is silent or ambiguous with respect to the specific issue,” then, under step two, the court will defer to an agency’s statutory interpretation if it “is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778.
The questions regarding States’ obligations to submit “good neighbor” SIPs are straightforward: (1) Do States have an independent obligation to submit SIPs with adequate “good neighbor” provisions; (2) if so, what triggers that obligation; (3) if there is an obligation, what is the deadline for the SIP submission; and (4) must *47 EPA prospectively quantify each States’ amount of “significant contribution” to downwind nonattainment? The plain text of the statute provides equally straightforward answers: (1) Yes; (2) promulgation of a NAAQS; (3) within three years of promulgation of a NAAQS (unless the EPA Administrator prescribes a shorter deadline); and (4) no, but EPA may do so if it chooses.
Section 109 of the CAA requires EPA to promulgate NAAQS, a national health-based standard. See 42 U.S.C. § 7409. Section 110, in turn, provides that
(a)(1) Each State shall ... adopt and submit to the Administrator, within 3 years (or such shorter period as the Administrator may prescribe) after the promulgation of a national primary air quality standard (or any revision thereof) ... a plan which provides for implementation, maintenance, and enforcement of such [ ] standard ... within such State.
(2) Each implementation plan submitted by a State under this chapter ... shall
(D) contain adequate provisions—
(i) prohibiting, consistent with the provisions of this subchapter, any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will—
(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such [NAAQS].
Id. §§ 7410(a)(1) & (a)(2)(D)(i)(I) (emphases added). The plain text requires that within three years of EPA’s promulgation of a NAAQS, States shall submit SIPs, and those SIPs shall include adequate “good neighbor” provisions. This is the unambiguous obligation and chronology established by Congress. EPA has the first duty to set the NAAQS, and then States have series of follow-up duties, listed in section 110(a), to ensure attainment of the NAAQS. Among the duties clearly assigned to States is the inclusion in SIPs of adequate “good neighbor” provisions.
The court views this “interpretation”— that is, reading the actual text of the statute — -as a scene from Alice in Wonderland. See Op. at 33. It concludes that “[i]n our view, determining the level of reductions required under Section 110(a)(2)(D)(i)(I) is analogous to setting a NAAQS. And determining the level of reductions under the “good neighbor” provision triggers a period during which States may submit SIPs.” Id. at 33. Even if the court’s analogy were sound,[8] the premise of its analogy does not support its conclusion that EPA’s determination of emission reduction obligations triggers States’ obligations to submit “good neighbor” SIPs. Rather, the court rewrites a decades-old statute whose plain text and structure establish a clear chronology of federal and State responsibilities. Nowhere does the CAA place a requirement on EPA to quantify each State’s amount of “significant contribution” to be eliminated pursuant to the “good neighbor” provision, let alone include any provision relieving States of their “good neighbor” SIP obligations in the event EPA does not first quantify emission reduction obligations.[9] *48 The court’s “view” that EPA “determining the level of reductions under the “good neighbor” provision triggers the period during which States may submit SIPs” is irrelevant in view of the unambiguously plain text of section 110(a)(1) and (a)(2)(D)(i)(I), and, if the statute were ambiguous, the court would be required to defer to EPA’s interpretation that States have an independent obligation to submit “good neighbor” SIPs within three years of promulgation of the NAAQS because that interpretation is permissible under the statute, see Chevron, 467 U.S. at 843, 104 S.Ct. 2778. The court’s “role is ‘not to ‘correct’ the text so that it better serves the statute’s purposes’; nor under Chevron may [the court] ‘avoid the Congressional intent clearly expressed in the text simply by asserting that [the court’s] preferred approach would be better policy. The Congress has spoken plainly....” Virginia Dep’t of Med. Assistance Servs. v. Dep’t of Health & Human Servs., 678 F.3d 918, 926 (D.C.Cir.2012) (quoting Engine Mfrs. Ass’n v. EPA 88 F.3d 1075, 1089 (D.C.Cir.1996)).
Furthermore, the -court’s holding is entirely at odds with the holding in Michigan v. EPA 213 F.3d 663 (D.C.Cir.2000), see LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc). In Michigan, State petitioners contended that EPA violated the CAA by prospectively informing States what their nitrogen oxides (NOx) emission reduction budgets needed to be to adequately eliminate their amounts of “significant contribution” under the “good neighbor” provision, thus acknowledging their independent obligation to submit adequate “good neighbor” SIPs, see 213 F.3d at 686-87. State petitioners in Michigan argued that EPA had no authority to do what the State petitioners now before the court contend EPA has no authority not to do. In Michigan the court deferred, pursuant to Chevron step two, to EPA’s interpretation it could set State emissions budgets prospectively, given section 110’s “silence” on the question, as a permissible exercise of EPA’s general rulemaking authority under CAA section 301(a)(1), 42 U.S.C. § 7601(a)(1).[10] Inverting Michigan’s analysis of section 110, the court holds that under Chevron step one, see Op. at 34 n.32, section 110 itself unambiguously requires EPA to prospectively inform States of their “good neighbor” emission reduction requirements. See id. at 31-35. Nothing in section 110, section 301, or any other section of the CAA requires EPA to do this. Instead the court today turns “may” into “must,” and holds that if EPA does not exercise its general rulemaking authority in the manner of the court’s design, then section 110(a)(l)’s and 110(a)(2)(D)(i)(I)’s mandatory, unambiguous requirements that States submit adequate “good neighbor” SIPs within three years of the promulgation of a NAAQS are erased from the statute by judicial fíat— relieving States of the duty Congress imposed.[11] The court offers no explanation *49 for how its holding can be squared with Michigan in this regard.
The court’s rationale for rewriting the CAA’s plain text is its own conclusion that “the upwind State’s obligation remains impossible for the upwind State to determine until EPA defines it.” Id. at 32 (first emphasis added). In its words, the statute “requires each State to take its own stab in the dark ... [and] apply [a] homemade definition using its own homemade methodology.” Id. at 35. The court concludes EPA’s interpretation, (that is, following the statute’s plain text) produces absurd results, see id. at 34 n.32. Pretermitting whether there is a shred of record evidence to show such an impossibility, a statutory outcome is absurd [only] if it defies rationality^ ... an outcome so contrary to perceived social values that Congress could not have intended it.” Landstar Express, 569 F.3d at 498-99 (internal quotation marks and citations omitted) (emphases added). To the extent the court’s rationale hinges on its speculation that States lack technical capability and information, this blinks at reality. As counsel for EPA emphasized at oral argument, see Tr. Oral Arg. at 59, 61, without contradiction by any petitioners’ counsel during rebuttal oral argument, States are fully capable of measuring interstate transport of emissions by conducting modeling, and they have done so before and continue to do so: “The states can make that effort, and they can submit SIPs to EPA. Again, that is how the process works in the states that aren’t included in these transport regions.” Id. at 61. Indeed, as this court has recognized, States are charged with operating air quality monitors; “[e]xhaustive technical specifications regulate the States’ operation of a network of air monitors that collect air quality data for any given area.” Catawba Cnty., N.C. v. EPA, 571 F.3d 20, 30 (D.C.Cir.2009); cf. ATK Launch Sys. v. EPA 669 F.3d 330, 334 (D.C.Cir.2012). The air quality monitoring data collected by the States is publically available in the National Emissions Inventory.[12] That is, State air quality divisions are no strangers to complex air quality and meteorological modeling of interstate transport of emissions.[13]
*50 No petitioner suggests that States lack the capability to measure their interstate emissions of pollutants or to access that information from other States to independently determine emission reduction budgets, much less that they have not had time to do so; rather their reason for not doing so appears to stem from insistence (supported by industry sources) that their reduction of emissions not be one iota greater than is necessary for downwind States to attain and maintain NAAQS and that it is easier (and presumably less costly, see Oral Arg. Tr. 58) for EPA to figure this out than it is for the individual States to do so, working cooperatively and using any EPA guidance. This may be so but it does not demonstrate that Congress’s scheme, protecting States’ choices about how to meet NAAQS requirements, in part by independently determining ways to meet their “good neighbor” obligation as the States argued in Michigan, is absurd.
It is true, as the court notes, see Op. at 34-35, that in two previous “good neighbor” rulemakings EPA afforded States the opportunity to submit SIPs after announcing emission reduction budgets. But an agency is not forever restricted to its previous policy choices or statutory interpretations; instead, it may change course provided it acknowledges it is doing so, presents “good reasons” for doing so, and its approach is “permissible under the statute.” FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009). Agencies “need not demonstrate to a court’s satisfaction that the reasons for the new policy are better than the reasons for the old one.” Id. The discretion agencies enjoy in modifying their policy approaches is particularly expansive where the agency declines to exercise its discretionary rulemaking authority, as EPA did here. “It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking.” WWHT, Inc. v. FCC, 656 F.2d 807, 818 (D.C.Cir.1981).
Here, EPA acknowledged its previous approach, see Transport Rule, 76 Fed. Reg. at 48,217; NPRM, 75 Fed. Reg. at 45,222-223, and explained its decision in response to comments requesting States be given time to submit SIPs before EPA imposed the Transport Rule FIPs. EPA stated, first, that it had no authority to alter the statutory deadlines for SIP submissions and that the CAA did not require it to issue a rule quantifying States’ “good neighbor” obligations, see Transport Rule, 76 Fed. Reg. at 48,220; second, that the court in North Carolina, in remanding rather than vacating CAIR, “emphasized EPA’s obligation to remedy [CAIR’s] flaws expeditiously” and thus “EPA d[id] not believe it would be appropriate to establish a lengthy transition period to the rule which is to replace CAIR,” Transport Rule, 76 Fed. Reg. at 48,220; and third, that in North Carolina this court also required EPA to align upwind States’ emission reduction deadlines with the NAAQS attainment dates of “2015 or earlier,” see North Carolina, 531 F.3d at 930.[14] EPA’s *51 decision to adhere to the plain text of the statute, and not to exercise its discretionary general rulemaking authority, see Michigan, 213 F.3d at 686-87, was thus well-explained by the time pressures imposed by this court. See Fox Television, 556 U.S. at 515,129 S.Ct. 1800. Inasmuch as those time pressures were animated as well by concern for the public health and welfare — Congress required that attainment with the NAAQS occur “as expeditiously as practicable.” 42 U.S.C. §§ 7502(a)(2)(A) & 7511; see North Carolina, 531 F.3d at 930 — the instant case is particularly ill-suited for overturning EPA’s exercise of its discretion in not adding an additional rulemaking step to the process. Given that the court “will overturn an agency’s decision not to initiate a rulemaking only for compelling cause,” and one of those few compelling reasons is when the decision declining to promulgate a rule exacerbates “grave health and safety problems for the intended beneficiaries of the statutory scheme,” Midwest Indep. Transmission Sys. Operator, Inc., v. FERC, 388 F.3d 903, 911 (D.C.Cir.2004) (internal quotation marks and citation omitted), it hardly makes sense for the court to require EPA to promulgate a rule when the effect will be to delay health benefits. Indeed, the court is most reluctant to require agencies to promulgate rules “when the interests at stake are primarily economic,” id., and the court’s view that it is “impossible” for States to comply with their independent “good neighbor” obligation under section 110(a) is animated by the burdens that obligation imposes on States and industry sources, see Oral Arg. Tr. 58.
In sum, the court’s conclusion that it would have been a “homemade” “stab in the dark” for the States to submit adequate “good neighbor” SIPs prior to promulgation of the Transport Rule lacks a basis in fact, and the court’s speculation that EPA would have inevitably disapproved such submissions, see Op. at 36, is just that — speculation. And if that happened, States could judicially challenge the disapprovals, seeking a stay to avoid application of the Transport Rule FIPs. Absent record evidence to suggest that the plain text of the CAA’s “good neighbor” SIP obligation on States leads to “an outcome so contrary to perceived social values that Congress could not have intended it,” Landstar Express, 569 F.3d at 498-99 (internal quotation marks and citations omitted) (emphasis added), the court is bound, in view of the host of responsibilities placed on States in the CAA, to enforce the statute as Congress wrote it in plain terms, to give deference to EPA’s permissible interpretations where the CAA is silent or ambiguous, and to adhere to the court’s interpretation of EPA’s authority in Michigan, as well as acknowledge, as the expert agency has advised without contradiction, that States have demonstrated competence to satisfy their plain statutory “good neighbor” obligations.
II.
The court also is without jurisdiction to hold that EPA lacked statutory authority to use a different measure of “significant contribution” for setting emission reduction budgets, unrelated to its measure of “significance” for purposes of threshold inclusion of individual States in the Trans *52 port Rule. Op. at 25-27. Petitioners contended that there was a hypothetical possibility that “application of cost-effective controls [ ] could drive a State’s emissions below the point that, under phase one, would have excluded the State from any regulation whatsoever.” State Petrs’ Br. at 35; Industry & Labor Petrs’ Br. at 22-24.[15] Because no objection was made during the Transport Rule administrative proceedings to EPA’s statutory authority to adopt its two-step approach, the court thus lacks jurisdiction to decide this issue. See CAA § 307(d)(7)(B), 42 U.S.C. § 7607(d)(7)(B). The jurisdictional question is not close; the court’s effort to avoid this court’s well-settled precedent fails clearly.
A.
Section 307(d)(7)(B) of the CAA provides that “[o]nly an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment ... may be raised during judicial review.” 42 U.S.C. § 7607(d)(7)(B) (emphasis added). The court has “ ‘strictly’ enforce[d] this requirement,” Mossville Envtl. Action Now v. EPA, 370 F.3d 1232, 1238 (D.C.Cir.2004) (quoting Motor & Equip. Mfrs. Ass’n v. Nichols, 142 F.3d 449, 462 (D.C.Cir.1998)); see also Natural Res. Def. Council v. EPA 571 F.3d 1245, 1259 (D.C.Cir.2009). The court also has made clear that “[rjeasonable specificity requires something more than a general challenge to EPA’s approach.” Mossville, 370 F.3d at 1238 (internal quotation marks and alteration omitted). The court’s enforcement of this requirement has been most strict in the context of statutory authority objections:
While there are surely limits on the level of congruity required between a party’s arguments before an administrative agency and the court, respect for agencies’ proper role in the Chevron framework requires that the court be particularly careful to ensure that challenges to an agency’s interpretation of its governing statute are first raised in the administrative forum.
Cement Kiln Recycling v. EPA 255 F.3d 855, 860 (D.C.Cir.2001) (quoting Natural Res. Def. Council, Inc. v. EPA 25 F.3d 1063, 1074 (D.C.Cir.1994)) (emphasis added). Consistently, until now, the court has held that failure to object specifically to EPA’s lack of statutory authority is grounds for dismissal of such objections in this court. See, e.g., Natural Res. Def. Council v. EPA 559 F.3d 561, 563-64 (D.C.Cir.2009); Engine Mfrs. Ass’n v. EPA 88 F.3d 1075, 1097 (D.C.Cir.1996); Ohio v. EPA 997 F.2d 1520, 1528 (D.C.Cir.1993); Linemaster Switch Corp. v. EPA 938 F.2d 1299, 1308 (D.C.Cir.1991); Natural Res. Def. Council v. Thomas, 805 F.2d 410, 427 (D.C.Cir.1986).
Notably on point, in Cement Kiln the court held that comments stating a policy preference to EPA were insufficient to preserve for judicial review objections that the preferred approach was statutorily required, 255 F.3d at 860-61. “[Tjhese comments merely argued that EPA could permissibly consider [the approach], not (as petitioners now argue) that [the CAA] re *53 quires [the approach].” Id. at 860 (internal quotation marks and citation omitted) (emphases in original). And “the parties were not saved by the fact that they had made other technical, policy, or legal arguments before the agency. Indeed, if such were the rule, a party could never waive a legal claim as long as the party in fact appeared and argued something before the agency.” Nat. Res. Def. Council, 25 F.3d at 1074 (internal quotation marks omitted) (emphasis added).
Petitioners rely on two comments in an attempt to show a challenge to EPA’s statutory authority to the approach it adopted was presented during the Transport Rule administrative proceedings. See Industry & Labor Petrs.’ Reply Br. at 6, n.l. Neither is sufficient. Tennessee commented that “[a] lower cost threshold should be considered for any State that can reduce their contribution below 1% significance using cost thresholds below the maximum values ($2,000/ton for S02 and $500/ton for NOx), if applicable.” Tennessee Comments on 2010 Proposed Transport Rule, Attachment 1, at 1 (Aug. 27, 2010). But this comment does not suggest that EPA is statutorily barred from following its approach. See Cement Kiln, 255 F.3d at 860-61; Natural Res. Def. Council, 25 F.3d at 1073-74. Furthermore, Tennessee’s comment does not even suggest a policy preference that the one percent of NAAQS threshold level be a floor. Rather, Tennessee’s comment specifically mentions States reducing contributions below the threshold without suggesting that result would violate the CAA. Thus, the only thing Tennessee commented on with “reasonable specificity” was that EPA consider not using a uniform cost threshold for all States.
Wisconsin’s comment also does not demonstrate the statutory authority challenge now advanced by petitioners in this court was preserved. First, Wisconsin stated that it “supported] the 1% contribution threshold ... for identifying states that are significant contributors to downwind state’s air quality nonattainment and maintenance problems.” Wisconsin Comments, at 1 (Oct. 1, 2010). Wisconsin further stated:
State final emission budgets (2014) need to be set with a stronger linkage to residual air quality impact from the [electricity generating unit (“EGU”)] on downwind sites compared to the current proposed linkage of limiting emission reductions by an arbitrarily low cost threshold. EPA has set which states have contribution reduction responsibility based on air quality impact, but appears to default to a modeling of the most efficient regional EGU control program based exclusively on cost-effectiveness.
In defining significant contribution, EPA should place a greater emphasis on air quality impact (contribution) remedy than the assessed state-by-state marginal control cost-effectiveness of proposed remedy in the setting of the 2014 state budgets for EGU reductions. Issues are both legal and a concern for some level of EGU system control installation equity between nearby states and between facilities with differing coal types which are dispatched within the same electricity markets.
Id. at 7 (emphases added). Wisconsin nowhere suggested that EPA is statutorily required to use the one percent inclusion threshold as a floor for emission reductions; it simply urged that EPA “should” put a “greater emphasis” on air quality impacts at the individual EGU level. Indeed, Wisconsin commented that the cost threshold was too low, the exact opposite of what petitioners now claim. See Industry & Labor Petrs.’ Br. at 31-34. The *54 closest Wisconsin comes to raising a statutory authority argument is its statement that the “issues are [] legal;” but that vague comment is in a sentence indicating the State’s preference that EPA regulate at the EGU, rather than the State level, in order to achieve “EGU system control installation equity.” Wisconsin Comments, at 7.
Consequently, neither Tennessee’s nor Wisconsin’s comments argued “with reasonable specificity” that EPA was statutorily required to treat the threshold inclusion level in its two-step approach to defining “significant contribution” as a floor in calculating emission reduction requirements.[16] Nor do they even present a policy preference for such an approach and, indeed, can be interpreted as supporting sub-threshold reductions. Even if the comments implied a challenge, which they do not, an implied challenge is insufficient because
that is not the way the regulatory system is structured. Such a standard would require agencies to review perpetually all of the ‘implied’ challenges in any challenge they receive. We will not impose such a burden on the agency. All that [petitioner] had to do was draft one sentence that specifically challenged EPA’s decision. It did not, and that specific challenge is thus not preserved.
[T]he only way [the comments] could be read as placing the EPA on notice is to place the burden on EPA to cull through all the letters it receives and answer all of the possible implied arguments. Such a rule would defeat the statutory requirement for “reasonable specificity.”
Mossville, 370 F.3d at 1239-40. None of the comments during the Transport Rule administrative proceedings approaches the level of “reasonable specificity” required for this court to have jurisdiction over petitioners’ new statutory authority argument.
B.
Acknowledging this, the court nonetheless concludes that it has jurisdiction to address this new issue because “EPA was on notice that its disregard of the significance floor was a potential legal infirmity in its approach.” Op. at 25 n.18. None of the three reasons the court offers for its conclusion that there need not be objections raised “with reasonable specificity during the period for public comment,” 42 U.S.C. § 7607(d)(7)(B), is convincing.
First, the court states that EPA was required “to craft a new rule consistent with [North Carolina],” Op. at 24 n.18 (internal quotation marks and citation omitted), and thus should have been alerted to petitioners’ new objection, raised for the first time now in this court. But in North Carolina the court specifically permitted the exact same approach in CAIR. Discussing this approach, the court explained:
[S]tate S02 budgets are unrelated to the criterion (the “air quality factor”) by which EPA included states in CAIR’s S02 program. Significant contributors, for purposes of inclusion only, are those states EPA projects will contribute at least 0.2 |xg/m3 of PM25 to a nonattainment area in another state. While we would have expected EPA to require states to eliminate contributions above *55 this threshold, EPA claims to have used [as its] measure ... emissions that sources within a state can eliminate by applying “highly cost-effective controls.” EPA used a similar approach in deciding which states to include in the NOx SIP Call, which Michigan did not disturb since “no one quarrel[ed] either with its use of multiple measures, or the way it drew the line at” the inclusion stage. 213 F.3d at 675. Likewise here, the S02 Petitioners do not quarrel with EPA drawing the line at 0.2 p,g/m3 or its different measure of significance for determining states’ S02 budgets. Again, we do not disturb this approach.
North Carolina, 531 F.3d at 916-17 (emphases added). There is no basis to conclude that EPA acted inconsistently with North Carolina by replicating the approach the court left undisturbed. It is true that in North Carolina the court rejected EPA’s use of fuel factors in allocating allowances for the CAIR trading program because doing so redistributed reduction responsibilities to the benefit of States with more coal-fired electricity generation, see id. at 920-21. The court stated that EPA
may not require some states to exceed the mark. Because the fuel-adjustment factors shifted the burden of emission reductions solely in pursuit of equity among upwind states — an improper reason — the resulting state budgets were arbitrary and capricious.
Id. at 921 (emphases added). But a holding that EPA had acted arbitrarily in designing its trading program cannot fairly be deemed to alert EPA that it might exceed its statutory authority in using ah approach to measuring “significant contribution” that the court specifically declined to disturb. Cf. Natural Res. Def. Council v. EPA 571 F.3d 1245, 1259 (D.C.Cir.2009) (“EPA cannot be expected to take [an] argument, raised in support of one specific objection, and apply it sua sponte to another provision.”). EPA was entitled, in the absence of objection in the Transport Rule administrative proceedings, to rely in promulgating the Transport Rule upon the court’s decision not to disturb its approach. And the fact that after North Carolina no comment in the Transport Rule administrative proceedings objected that EPA was exceeding its statutory authority in adopting its approach underscores the fact that EPA was not acting inconsistently with North Carolina in light of a few sentences about fuel factors plucked out of context.
Second, reaching farther afield, the court points to a comment submitted during the CAIR rulemaking that it deems sufficient, when combined with the holding in North Carolina, to “show that EPA ‘had notice of this issue and could, or should have, taken it into account.’ ” Op. at 24 n.18 (quoting Natural Res. Def. Council v. EPA 824 F.2d at 1146, 1151 (D.C.Cir.1987)).[17] The CAIR comment stated “that the threshold contribution level selected by EPA should be considered a floor, so that upwind States should be obliged to reduce their emissions only to the level at which their contribution to downwind nonattainment does not exceed that threshold level.” CAIR, 70 Fed. Reg. 25,162, 25,176-77 (May 12, 2005). This comment, which was not cited in any petitioners’ brief to this court but first mentioned by industry petitioners during rebuttal oral argument, cannot carry the weight the court assigns to it, particularly in light of the holding in North Carolina. The court generally does not entertain arguments raised for the *56 first time in a reply brief, see Altman v. SEC, 666 F.3d-1322, 1329 (D.C.Cir.2011); North Carolina, 531 F.3d at 924 n. 6, let alone for the first time at oral argument, see Roth v. U.S. Dep’t of Justice, 642 F.3d 1161, 1181 (D.C.Cir.2011); Ark Las Vegas Rest. Corp. v. NLRB, 334 F.3d 99, 108 n. 4 (D.C.Cir.2003), much less during rebuttal oral argument, see Coalition of Battery Recyclers Ass’n, 604 F.3d at 623; Old Dominion Dairy Products, Inc. v. Sec. of Defense, 631 F.2d 953, 961 n. 17 (D.C.Cir.1980). The reason is simple: “in order to prevent ‘sandbagging of appellees and respondents,’ we do not consider arguments that were raised neither in the opening brief nor by respondents.” S. Coast Air Quality Mgmt. Dist. v. EPA, 554 F.3d 1076, 1081 n. * (D.C.Cir.2009) (quoting Sitka Sound Seafoods, Inc. v. NLRB, 206 F.3d 1175, 1181 (D.C.Cir.2000)). Here that reason has particular resonance because EPA was relying on the court’s decision in North Carolina, 531 F.3d at 916-17, to “not disturb” its two-step approach to defining “significant contribution,” and no one referenced the CAIR comment during the Transport Rule administrative proceedings.
Even setting aside the starkly novel forfeiture standard the court has chosen to apply to industry petitioners, the cited CAIR comment is insufficient to establish that the issue of EPA’s statutory authority was properly preserved for the court to have jurisdiction to address it. The court relies on a footnote in American Petroleum Institute v. EPA, 52 F.3d 1113, 1120 n. 1 (D.C.Cir.1995), for the proposition that it is “highly relevant” if an agency previously “reject[ed] [ ] the same argument in a prior rulemaking,” Op. at 24 n.18. Although the CAIR comment communicates a policy preference, this court has distinguished between comments presenting policy preferences and those presenting statutory authority objections, see, e.g., Cement Kiln, 255 F.3d at 860-61, and technical and policy arguments are insufficient to preserve objections to EPA’s statutory authority. See Nat. Res. Def. Council, 25 F.3d at 1074. The CAIR comment that EPA rejected in the other rulemaking is therefore not “the same argument” that petitioners belatedly attempt to raise now. Furthermore, in American Petroleum, the court concluded that the jurisdictional question was “close” inasmuch as EPA had explicitly incorporated the docket from the previous rulemaking in the second rule-making, and the previous rulemaking had been aborted, such that there was no intervening opportunity for judicial review. See Am. Petroleum, 52 F.3d at 1120 n. 1. Neither of those factors that made American Petroleum a close case is present here. The Transport Rule was promulgated to replace CAIR, but the CAIR docket was never incorporated into the Transport Rule docket — perhaps because of the court’s instruction in North Carolina that EPA “redo its analysis from the ground up.” 531 F.3d at 929. EPA would have had no reason to reexamine the voluminous CAIR docket in search for objections that were not raised before the court in North Carolina. Also, unlike the aborted rule whose docket EPA incorporated in American Petroleum, in CAIR there was an intervening opportunity for judicial review. Yet no one sought judicial review of CAIR on the basis of the CAIR comment now relied on by the court. This precise circumstance was relied upon by the court in North Carolina in declining to disturb EPA’s approach. See id. at 917; see Med. Waste, 645 F.3d at 427.[18] Once the court *57 in North Carolina declined to disturb EPA’s approach, because no objection to EPA’s authority to adopt its approach had been raised to the court, petitioners were required to inform EPA during the Transport Rule administrative proceedings that they objected to EPA’s statutory authority to pursue that approach. See 42 U.S.C. § 7607(d)(7)(B). If American Petroleum presented a “close” jurisdictional question, then the jurisdictional question here is easily decided.
Third, the court concludes that “EPA’s statements at the proposal stage indicated EPA was not open to reconsidering CAIR’s earlier rejection of petitioners’ argument,” and that because EPA had dismissed “the two air quality-only approaches it considered,” the comments of Tennessee, Wisconsin, and Delaware were “ ‘reasonable’ under the circumstances,” Op. at 24, n.18. But there was no such “earlier rejection of petitioners’ argument” in CAIR because the CAIR comment did not suggest that EPA exceeded its statutory authority by following its two-step approach to defining “significant contribution.” See Cement Kiln, 255 F.3d at 860-61. Furthermore, industry petitioners acknowledge in their Reply Brief that they “are not advocating an ‘air quality-only’ approach,” but instead a cost-based approach with a floor for emission reduction obligations. Industry & Labor Petrs’ Reply Br. at 10. So, EPA’s rejection of two alternative air quality-only approaches has no bearing on whether EPA would have been willing to entertain an objection during the Transport Rule administrative proceedings that the “good neighbor” provision required it to use the threshold level for a State’s inclusion in the Transport Rule as a floor for emission reduction obligations.
Nothing in this court’s precedent on CAA section 307(d)(7)(B), 42 U.S.C. § 7607(d)(7)(B), supports the court’s tortured efforts to avoid the jurisdictional limits in the CAA and seize jurisdiction where petitioners clearly fall far short of preserving their claim by objecting to EPA’s statutory authority during the Transport Rule administrative proceedings with “reasonable specificity.” The court does not acknowledge this court’s precedent setting a strict standard for preservation of statutory authority objections, which demonstrates the inconsistency of the court’s exercise of jurisdiction today. See, e.g., Natural Res. Def. Council, 559 F.3d at 563-64; Am. Farm Bureau Fed’n v. EPA 559 F.3d 512, 538 (D.C.Cir.2009); Natural Res. Def. Council v. EPA 571 F.3d 1245, 1259 (D.C.Cir.2009); Mossville, 370 F.3d at 1238; Cement Kiln, 255 F.3d at 860-61; George E. Warren Corp. v. EPA, 159 F.3d 616, 629 (D.C.Cir.1998); Motor & Equip. Mfrs. Ass’n, 142 F.3d at 462; Natural Res. Def. Council, 25 F.3d at 1074; Ohio v. EPA, 997 F.2d at 1528-29; Natural Res. Def. Council v. EPA, 937 F.2d 641, 647-48 (D.C.Cir.1991); Linemaster Switch Corp., 938 F.2d at 1308; Thom *58 as, 805 F.2d at 425-27; Lead Indus. Ass’n, 647 F.2d at 1173.
Rather than confront the force of this precedent, the court relies on phrases from a few opinions suggesting a more flexible standard, see Op. at 24-25 n.18, but tellingly omits any discussion of the analyses or outcomes in those cases. This is because even where the court has mentioned flexibility, the comments at issue were either significantly more specific than the comments of Tennessee and Wisconsin, and were thus sufficient, or were more specific but nonetheless deemed wanting. For example, in Natural Resources Defense Council v. EPA 571 F.3d 1245, 1259 (D.C.Cir.2009), the court suggested there is “leeway” but concluded, in words that resonate here, that “EPA cannot be expected to take [an] argument, raised in support of one specific objection, and apply it sua sponte to another provision.” Id. at 1259-60. The irony in the court’s reliance on this case is that it expects EPA to read North Carolina in precisely the opposite manner — it concludes EPA should have taken a holding about “exceeding the mark” in the CAIR trading allowance program and sua sponte applied it to the methodology for calculating “significant contribution,” even though the -.court explicitly declined to disturb that methodology. See supra Pt. II.B. In Appalachian Power, 135 F.3d 791, 817 (D.C.Cir.1998), the court concluded the “argument ... during the comment period [was] — in substance, if not in form, the same objection” raised before the court, whereas here the comments of Tennessee and Wisconsin did not raise the statutory authority objection now urged upon the court in either form or substance. The court also relies on Natural Resources Defense Council v. EPA 824 F.2d 1146, 1150-51 (D.C.Cir.1987) (en banc), which involved common law exhaustion, not CAA section 307(d)(7)(B), and in that case the issue was “explicitly raised ... in comments” before the EPA, id. at 1151. And although observing in South Coast Air Quality Management District v. EPA 472 F.3d 882, 891-92 (D.C.Cir.2009), that petitioners have “some leeway,” the court concluded that leeway did not permit the petitioner to rely upon a general procedural preference stated in a cover letter to its comments to alert EPA to the details of the objections to a final rule.
None of the court’s proffered reasons for ignoring section 307(d)(7)(B)’s jurisdictional limitations has merit on its own, nor in combination. “[Z]ero plus zero [plus zero] equals zero.” U.S. v. Clipper, 313 F.3d 605, 609 (D.C.Cir.2002).
III.
The court’s remaining reasons for vacating the Transport Rule are also either beyond its jurisdiction or unpersuasive.
First, the court concludes that EPA violated the CAA by not calculating the required emission reductions “on a proportional basis that took into account contributions of other upwind States to the downwind States’ nonattainment problems.” Op. at 27. This is so, the court says, because in Michigan the court only permitted cost to be considered as a way “to allow some upwind States to do less than their full fair share,” not more. Id. Petitioners have not argued that EPA violated the CAA by not calculating emission reductions on a proportional basis, as the court suggests. See Anna Jaques Hosp. v. Sebelius, 583 F.3d 1, 7 (D.C.Cir.2009). The statement in industry petitioners’ brief that the court quotes, see Op. at 26, instead maintains that EPA was arbitrary and capricious in the way it grouped States for 2014 sulfur dioxide (S02) budgets because, they claimed, EPA did so without “considering] relative contribu *59 tions of the various States,” Industry & Labor Petrs’ Br. at 33. This challenge is limited to the asserted arbitrariness of how certain States were categorized for one pollutant’s budget for one year. The court lacks jurisdiction to consider sua sponte an objection to EPA’s statutory authority not raised by petitioners within the sixty day period required under CAA section 307(b)(1), 42 U.S.C. § 7607(b)(1); see Med. Waste, 645 F.3d at 427. As this court has previously said, “[t]o rely on relief plaintiffs never requested on a claim they never made would be to conclude that zero plus zero equals more than zero.” NAACP, Jefferson Cnty. Branch v. U.S. Sugar Corp., 84 F.3d 1432, 1438 (D.C.Cir.1996).
Second, even if petitioners had raised a “proportionality” statutory authority objection, this objection and the court’s conclusion are premised on the speculative possibility that the Transport Rule might require States to reduce emissions to a level below the one percent of NAAQS inclusion threshold of EPA’s two-step approach to defining “signification contribution,” and thus more than their statutory fair share — an argument over which the court also lacks jurisdiction. See supra Part II. Further, the court’s conclusion is at odds with North Carolina where the court concluded that EPA’s measure of significant contribution need not “directly correlate with each State’s individualized air quality impact on downwind nonattainment relative to other upwind states.” 531 F.3d at 908 (emphasis added); see LaShaum A., 87 F.3d at 1395. It also ignores that in Michigan the court expressly permitted the use of uniform cost thresholds to measure “significance,” and likewise permitted the “ineluctable]” result of small and large contributors being required to make the same amount of reductions. 213 F.3d at 679. Without jurisdiction to reach an argument on whether the Transport Rule requires States to reduce more than their statutory fair share, Michigan requires the conclusion that EPA’s choice of cost thresholds in the Transport Rule was permissible.
Next, the court concludes that EPA failed to consider the effect of in-State emissions of downwind States on their own nonattainment and interference with maintenance problems, see Op. at 57. Petitioners conceded at oral argument that this “in-State contribution” contention was “not actually an independent statutory authority argument,” Oral Arg. Tr. at 32, but merely a repackaged version of the objection to the possibility of reductions below the one percent of NAAQS inclusion threshold, an argument over which the court lacks jurisdiction, see supra Part II. Even if the court had jurisdiction to address it, the court’s conclusion is unsupported by the record. EPA examined the various cost threshold for each State, and in so doing considered
how much air quality improvement in downwind states resulted] from upwind state emission reductions at different levels; whether, considering upwind emission reductions and assumed local (in-state) reductions, the downwind air quality problems would be resolved; and the components of the remaining downwind air quality problem (e.g., whether it is a predominantly local or in-state problem, or whether it still contains a large upwind component).
Transport Rule, 76 Fed. Reg. at 48,256 (emphases added); see id. at 48,259 (concluding remaining nonattainment problem in Liberty-Clairton was the result of local emissions). EPA thus in fact examined the contribution of downwind States to their own nonattainment problems.
Finally, the court concludes that EPA “did not try to take steps to avoid” collec *60 tive over-control, Op. at 27. This conclusion too is unsupported by the record. The Transport Rule was not projected to achieve attainment of all downwind nonattainment and maintenance problems attributed to upwind States. See id. at 48,-210, 48,282, 48,247-48; Resp.’s Br. at 38 n.24. Because EPA’s analysis demonstrated instances of “remaining downwind air quality problems,” Transport Rule, 76 Fed. Reg. at 48,256, there is no support for the court’s conclusion that the Transport Rule resulted in collective over-control.
IV.
The Transport Rule, as EPA observes, represents “the culmination of decades of Congressional, administrative, and judicial efforts to fashion a workable, comprehensive regulatory approach to interstate air pollution issues that have huge public health implications.” Resp.’s Br. at 12. The legislative history to amendments of the CAA documents Congress’s frustration with the upwind States’ historic failure to take effective action on their own to curtail their contributions to problems of pollution in downwind States, leading to amendments to strengthen EPA’s hand. The court ignores Congress’s limitations on the court’s jurisdiction and decades of precedent strictly enforcing those limitations and proceeds to do violence to the plain text of the CAA and EPA’s permissible interpretations of the CAA, all while claiming to be “applying] and enforcing] the statute as it’s now written.” Op. at 12. The result is the endorsement of a “maximum delay” strategy for regulated entities, rewarding States and industry for cloaking their objections throughout years of administrative rulemaking procedures and blindsiding the agency with both a collateral attack on its interpretation of section 110(a) and an objection raised for the first time in this court, despite the court’s previous decisions declining to disturb the approach EPA adopted in the Transport Rule.
To reach the result — vacating the Transport Rule — the court does several remarkable things. It seizes jurisdiction over the issue of States’ independent “good neighbor” obligation by allowing States to pursue a collateral attack on Final SIP Rules from which they either failed timely to file petitions for review or their petitions challenging those rules have not been consolidated with the petitions challenging the Transport Rule that are before this three-judge panel. It asserts jurisdiction over industry’s challenge to EPA’s two-step approach to defining “significant contribution” by excusing industry from its failure to preserve the issue by first presenting it to EPA and then resting jurisdiction on a comment in another rulemaking that was first cited by industry in rebuttal oral argument and cannot bear the weight the court assigns to it because it did not challenge EPA’s statutory authority to adopt its two-step approach. All this is contrary to Congress’s limitations on the court’s jurisdiction and this court’s precedent enforcing those limitations. The rest of the court’s analysis recalibrates Congress’s statutory scheme and vision of cooperative federalism in the CAA. Along the way, the court abandons any consideration that an agency is entitled to repose, absent objection during its administrative proceedings, when a court, here on two occasion, expressly leaves undisturbed its two-step approach to enforcing a statute it administers and no objection is raised during the Transport Rule administrative proceedings. Then, in dictum, the court offers suggestions as to how EPA might fix the problems the court has created upon rewriting the CAA and trampling on this court’s precedent in North Carolina and Michigan.
*61 None of this is to suggest that EPA should be excused from the statutory limits on its authority or any material procedural missteps under the CAA or the APA. But neither can the court ignore jurisdictional limits or substantive provisions that Congress wrote in clear terms and EPA’s permissible interpretations of the CAA in addressing statutory silence or ambiguity. Rather it underscores why, as a programmatic and public health matter, Congress concluded there are important reasons for jurisdictional limits and administrative exhaustion that this court heretofore has steadfastly acknowledged in recognizing both the limits of its jurisdiction and of its role in enforcing the CAA as Congress wrote it.
Accordingly, I respectfully dissent.

. Section 110(a)(1) of the CAA provides that States must submit SIPs within three years (or less, if set by EPA) of promulgation of a NAAQS. Section 110(a)(2)(D), in turn, requires States to submit SIPs with "adequate provisions”
(i) prohibiting, consistent with the provisions of this subchapter, any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will—
(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard.
42 U.S.C. § 7410(a)(2)(D)(i)(I).

. The States and territories were: Alaska, Colorado, Hawaii, Idaho, Illinois, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, South Dakota, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, the District of Columbia, American Samoa, the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, and the U.S. Virgin Islands. See Failure to Submit Good Neighbor SIP Findings, 75 Fed. Reg. at 32,674. (On July 20, 2011, EPA published an additional finding that Tennessee had failed to submit a "good neighbor” SIP for the 2006 24-hour PM2-5 NAAQS. See Tennessee Failure to Submit Good Neighbor SIP Fin ding, 76 Fed. Reg. 43,180 (July 20, 2011). Tennessee is not a petitioner here.

. See 76 Fed. Reg. at 43,131-33 (Alabama); 76 Fed. Reg. at 43,162-64 (Georgia); 76 Fed. Reg. at 43,176-79 (Indiana & Ohio); 76 Fed. Reg. at 43,145-47 (Kansas); 76 Fed. Reg. at 46,139-41 (Kentucky); 76 Fed. Reg. at 43,-170-72 (North Carolina). No comments were submitted to the proposed disapproval of Missouri’s “good neighbor” SIP submission, see 76 Fed. Reg. at 43,156, and only one unrelated comment was submitted to New York and New Jersey’s proposed disapproval, see 76 Fed. Reg. at 43,154. None of these three States is a petitioner here.

.See Ohio v. EPA, No. 11-3988 (6th Cir.); Westar Energy, Inc. v. EPA, No. 11-1333 (D.C.Cir.); Kansas v. EPA, No. 12-1019 (D.C.Cir.); Georgia v. EPA, No. 11-1427 (D.C.Cir.). The court consolidated the two Kansas cases (Nos. 11-1333 and 12-1019) on January 10, 2012. See Order Case No. 12-1019 (Jan. 10, 2012). The court also severed from Kansas’s Transport Rule petition, Case No. 11-1329, its challenge to EPA’s disapproval of its "good neighbor” SIP submission. See id. On January 10, 2012, the Sixth Circuit granted the parties’ joint motion to hold the case in abeyance pending the outcome of the instant case. On January 18, 2012, the D.C. Circuit issued orders holding the Kansas and Georgia cases in abeyance pending the outcome of the appeal in the present case.

. The same is true for Ohio, Georgia, and Kansas, which petitioned for judicial review of EPA's disapproval of their "good neighbor” SIP submissions. The court's "review in th[e] [instant] case is limited to” the Transport Rule, and the court thus "lack[s] jurisdiction over” challenges to those States' SIP disapprovals premised on whether they have an independent obligation to submit “good neighbor” SIPs. Coalition for Responsible Regulation, Inc. v. EPA, 684 F.3d 102, 149 (D.C.Cir.2012). The petitions filed by those States challenging their SIP disapprovals are not consolidated with the petitions before the court today, see supra n.5, and Ohio's petition is pending in the Sixth Circuit. The court must therefore "decline [State] [petitioners' invitation to rule on the merits of cases which are properly before different panels.” Id. This is all the more important here, where EPA has not yet been afforded the opportunity to assert an improper venue defense in the two cases pending before the D.C. Circuit. See Tex. Mun. Power Agency v. EPA, 89 F.3d 858, 867 (D.C.Cir.1996); 42 U.S.C. § 7607(b)(1) (petitions for review of SIP dis-approvals may be brought only in the court of appeals "for the appropriate circuit”) (emphasis added). If Georgia, Kansas, and Ohio wish to avoid enforcement of the Transport Rule FIPs because they contend EPA’s SIP disapprovals were in error, the proper course is to seek a stay of EPA's disapprovals in their pending cases; if granted, a stay would eliminate the basis upon which EPA may impose FIPs on those States. See 42 U.S.C. § 7410(c)(1)(B).

. Notice the circularity in the court’s statement. The court says State petitioners' "simultaneity” argument can be "[p]ut another way,” Op. at 37 n.34, as an argument that States had no section 110(a) SIP requirements until EPA quantified their emission reduction budgets. Under section 307(b)(1), that is exactly the argument that States were required to make in petitions for judicial review of the Final SIP Rules setting forth EPA’s section 110(a) interpretation.

. The NAAQS are determined based on what is "requisite to protect the public health” and "public welfare,” 42 U.S.C. § 7409(b)(1) & (2), and are a uniform national standard. The “good neighbor” provision, on the other hand, is not a separate national standard, but instead is simply one of the CAA's State-specific mechanisms to ensure attainment of the NAAQS. See 42 U.S.C. § 7410(a)(2)(D)(i)(I).

. The court’s comparison of section 110 to section 126, see Op. at 34, conflates direct *48 federal regulation of sources with EPA’s statutory authority to enforce requirements that States comply with their "good neighbor” SIP obligations. Given that Congress included a specific provision obligating EPA to promulgate FIPs if States fail to submit adequate SIPs within three years of promulgation of a NAAQS, see CAA § 110(c)(1); 42 U.S.C. § 7410(c)(1), and EPA relies on it in the Transport Rule, section 126's federal authorization to regulate specific sources of emissions has no bearing on the statutory analysis here.

. Section 301(a)(1) of the CAA provides that "[t]he Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter.” 42 U.S.C. § 7601(a)(1).

. Suffice it to say, it is extraordinarily unusual for a court to conclude, at Chevron step one, that it must delete mandatory obligations *49 from a statute in order to accord with Congress’s plain intent. See Op. at 34 n.32. It is all the more unusual to suggest that an agency's interpretation is "impermissible” at Chevron step two when the interpretation parrots the text of the statute.

. See U.S. EPA, Technology Transfer Network Clearinghouse for Inventories & Emissions Factors, available at http://www.epa. gov/ttnchiel/eiinformation.html (last visited July 23, 2012); see also U.S. EPA, Technology Transfer Network Clearinghouse for Regulatory Atmospheric Modeling, available at http://www.epa.gov/ttn/scram/aqmindex.htm (last visited July 23, 2012) (providing modeling tools).

. To cite one example: the State of Texas. The Texas Council on Environmental Quality ("TCEQ”) has published an extensive description of its air quality modeling activities and capabilities on its website. "The TCEQ uses state of the art computer models to simulate the meteorological conditions and chemical reactions that contribute to the formation of air pollutants.” TCEQ, Introduction to Air Quality Modeling, available at http://rn.tceq. texas.gov/airquality/airmod/overview/am_ intro.html (last visited July 23, 2012). Furthermore, "TCEQ uses state-of-the-science, four-dimensional computer models that incorporate atmospheric physical laws and measured observations to predict weather conditions over space and time.” TCEQ, Introduction to Air Quality Modeling: Meteorological Modeling, http://rn.tceq.texas.gov/ airquality/airmod/overview/am_met.html (last visited July 23, 2012). Indeed, TCEQ uses the same model EPA used to model emission contributions — CAMx. EPA notes in its brief that Texas provided some of the technical data that led to its inclusion in the final Transport Rule. See EPA Br. at 109. These are far from “homemade” methodologies. See Op. at 35.

. That EPA may, under different circumstances, view it as preferable to prospectively quantify States’ emission reduction obligations, see Op. at 32, is irrelevant to whether EPA’s stated reasons for departing, in the Transport Rule from its previous approach are adequate, given the court’s instruction in North Carolina to expeditiously replace the flawed CAIR and align NAAQS attainment dates. The context of the federal register citations is, EPA’s points out, EPA’s review of a submitted SIP; the preamble does not state EPA must engaged in detailed interstate transport analysis before States must meet their statutory SIP obligations. Furthermore, consistent with the federal register citations noted by the court, EPA has traditionally issued guidance to States on calculating their *51 "good neighbor” emission reduction obligations and it did so here, see, e.g., EPA Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 2006 24-hour Fine Particle (PMg^) National Ambient Air Quality Standards (NAAQS) (Sept. 25, 2009).

. As EPA responded, nothing in the record suggests this hypothetical possibility actually would occur as a result of the Transport Rule, see Resp.’s Br. at 33-34 & n.20; id. at 32 n.18, and the point of choosing a "cost” that is "effective” for each State assumes only a reasonable subset of emissions will be reduced. See Oral Arg. Tr. at 44-46. Furthermore, contrary to the court's suggestion, see Op. 26 n.23, EPA explained that selecting a cost below $500/ton of emissions would permit States to stop operating existing controls, thus increasing, rather than decreasing, pollution. See Transport Rule, 76 Fed. Reg. at 48,256-57.

. The court adds a cite, see Op. at 25 n.18, to a comment from Delaware: “It is Delaware’s opinion that an upwind state’s emissions contribution is significant ... based on the emissions and their effect on air quality, and is independent of cost considerations.” This is not a statutory authority objection to the two-step approach, and in any event EPA’s rejection of Delaware's “opinion" was sustained in Michigan, 213 F.3d at 679.

. Remarkably, the court quotes a case in which the common law exhaustion doctrine, rather than CAA section 307(d)(7)(B), applied: the rule at issue was promulgated prior to enactment of section 307(d)(7)(B). See Natural Res. Def. Council, 824 F.2d at 1150-51.

. The fact that Kansas, Nebraska, and Oklahoma were not regulated under CAIR, and thus would have a newly ripened claim, see Coalition for Responsible Regulation, 684 F.3d *57 at 129-32, does not mean that those States are relieved from making that claim during the Transport Rule administrative proceedings, as CAA section 307(d)(7)(B) requires. This is all the more true here because the petitioners who were subject to CAIR abandoned the CAIR comment now relied on by the court when they sought judicial review. To suggest that EPA should have foreseen that Kansas, Nebraska, and Oklahoma, despite not making an objection to the proposed Transport Rule on this ground, secretly did object on the basis of a comment made during a rulemaking to which they were not parties, and was abandoned on judicial review by those who made it, distorts the ripeness and CAA exhaustion doctrines beyond recognition and "give[s] parties to Clean Air Act proceedings a powerful weapon for delaying and sandbagging Agency action.” Lead Indus. Ass’n Inc. v. EPA, 647 F.2d 1130, 1173 (D.C.Cir.1980).